[No. 30214.   Department Two.   November 24, 1947.]

HAZEL MCHENRY, *Individually and as Administratrix, Respondent,* v. FRED SHORT *et al., Appellants.*[1]

[1]Reported in 186 P. (2d) 900.

*J. W. Graham, Marion Garland,* and *Frank Hunter,* for appellants.

*Oliver R. Ingersoll, Brodie & Brodie,* and *Charles T. Wright,* for respondent.

STEINERT, J.—In an action tried to the court without a jury, the plaintiff, suing in her own right and also as administratrix of her husband's estate, recovered judgment for damages against one of the named defendants and the marital community of which he was a member, for an assault committed by that defendant upon, and resulting in the death of, plaintiff's husband. This appeal is prosecuted by the defendants for and on behalf of the marital community only.

Two questions are raised on the appeal: (1) whether the complaint stated a cause of action against the community composed of the two individual appellants; and (2) whether

the evidence was sufficient to establish the fact that, at the time of committing the assault, the aggressor appellant was acting for and on behalf of the marital community of which he was a member, in furtherance of community business.

The complaint alleged, *in limine*, that George W. McHenry, the victim of the alleged assault, died May 6, 1943, leaving as his survivors his widow, respondent Hazel McHenry, and five children, two of whom were then minors; and that appellants, Fred Short and Geneva Short, at all times here involved were and are husband and wife. The following paragraphs of the complaint constitute the material allegations of the pleading in so far as we are presently concerned:

"(4) That on or about the 4th day of May, 1943, at about the hour of 8:15 A. M., while the said George W. McHenry was engaged in his daily labor, the defendant [appellant], Fred Short, *acting for and on behalf of the community composed of defendants [appellants], Fred Short and Geneva Short, husband and wife,* approached the said George W. McHenry and without just cause or provocation maliciously, unlawfully and unjustly assaulted the said George W. McHenry, and with great force and violence beat and struck him about the head and body, knocking the said George W. McHenry down and inflicting grievous injuries upon the said George W. McHenry; that as a result of the said injuries inflicted upon him by the said Fred Short, the said George W. McHenry did languish and languishing did die on or about the 6th day of May, 1943.

"(5) That defendant, Fred Short, did commit the assault herein complained of *under the guise and pretext* of ejecting the said George W. McHenry from real property claimed by the community composed of defendants, Fred Short and Geneva Short, husband and wife.

"(6) That the said George W. McHenry was at the time of said assault employed by and performing services and labor, in that he was painting a motor boat for and at the request of one E. K. Bishop, and that defendants as a community had granted to the said E. K. Bishop the right and privilege of keeping and storing certain personal property, to-wit: the said motor boat, boat house and marine railway, in the place where the said assault occurred, together with the privilege of ingress and egress to and from said personal property by said E. K. Bishop and his servants and

agents and that defendants as a marital community had received compensation from said E. K. Bishop." (Italics ours.)

For purposes of our present consideration, the material portions of the complaint may be condensed to read thus: That on the day in question Fred Short, acting for and on behalf of the community composed of the two appellants, unlawfully assaulted and inflicted grievous injuries upon George W. McHenry, respondent's husband, from which he died; that Short committed such assault under the guise and pretext of ejecting McHenry from certain real property claimed by the appellants as their community property; that at the time of the occurrence McHenry was performing work on a boat belonging to one Bishop and being stored on the premises where the assault was committed; and that the appellants as a marital community had received compensation from Bishop for the privilege of keeping the boat on the premises and for the right of ingress thereto and egress therefrom by Bishop and his agents or servants.

A demurrer to the complaint, interposed by the marital community, was overruled. Error is assigned upon that ruling, and the contentions now are (1) that, as against a demurrer, the phrase "acting for and on behalf of the community" is not a sufficient allegation of community interest or liability, and (2) that the averment in the complaint that Fred Short committed the assault "under the guise and pretext" of ejecting the deceased from premises claimed by the community was equivalent to saying that the assault was not committed for the purpose of evicting the deceased from the premises, but, rather, for personal reasons only, with removal as a mere pretext or guise.

In determining whether or not a complaint is sufficient as against a demurrer, the pleading, taken as a whole, will be liberally, not strictly, construed, with a view to substantial justice between the parties. Rem. Rev. Stat., § 285 [P.P.C. § 86-3]; *McMahan v. Mutual Benefit Health & Acc. Ass'n*, 28 Wn. (2d) 202, 182 P. (2d) 4, and cases therein cited.

■ We have frequently held that where substantial facts constituting a cause of action are stated in the complaint or can reasonably be inferred from the matters set forth therein, although the allegations of such facts are in effect conclusions of law, or are otherwise imperfect, incomplete, or defective, the insufficiency pertaining to the form rather than to the substance of the pleading, the proper mode of correction is not by demurrer nor by excluding evidence at the trial, but by motion before trial to make the averments more definite and certain by amendment. *McMahan v. Mutual Benefit Health & Acc. Ass'n, supra,* and cases therein cited.

In this instance, there was no motion to make the complaint more definite and certain. The attack upon the pleading was, first, by demurrer, and, later, by objection to the admission of any evidence by respondent.

■ The complaint may not be a model of good pleading, but we are unable to say that the facts as therein alleged, together with the relevant inferences readily deducible therefrom, are insufficient to state a cause of action. It may be that the construction placed by appellants on the words "under the guise and pretext" is not an illogical one, and that the quoted phrase, taken alone, may be interpreted to mean that the assault was committed not for the purpose of evicting the deceased from the premises, but purely to satisfy some personal grudge of Fred Short alone. However, even though eviction or the attempt to evict may have been but the ostensible reason or motive, assumed or assigned to cover the real motive, for the assault, still if the assault was a part of, or a step in, an actual eviction or attempt to evict, the ulterior motive which may have led to the assault would not of itself change the nature or legal effect of the overt act. To state it in another way, if the assault was committed while an eviction was actually in progress or being attempted, the mere fact that the physical attack was stimulated by some ulterior personal motive would not of itself render the act any the less an eviction or an attempt to evict.

Reading the complaint as a whole, we think it reasonably susceptible of the interpretation that, at the time of the altercation, Short was in the act of ejecting or was attempting to eject McHenry from premises which the community claimed to own or over which it had some authority, and that in doing what he did Short was acting in pursuance of his management of community property or in the furtherance of community business, even though his acts were in part influenced by his personal animosity. It is our opinion that the complaint was sufficient to permit the introduction of evidence in support of that theory, and that it was not error to overrule the demurrer.

 The next question, then, is whether the evidence was in fact sufficient to establish liability on the part of the marital community for the assault committed by one of its members.

At the time involved in this action, appellants Short resided in the town of Union, in Mason county, where they conducted a garage business. Their property lay between a highway and the waters of Hood Canal. Along one side of their property was a dedicated, but unopened, street extending from the highway to the water front. About five years or more prior to the event here in question, one E. K. Bishop had erected a boathouse at the water end of this unopened street, and had kept therein a speed boat which he used for pleasure purposes. The boathouse immediately adjoined the Short premises.

It appears that there were two keys to the boathouse, one of which was retained by Bishop and the other one kept by Short. It further appears that during this five-year period Bishop had customarily paid Short the sum of three dollars a month. The evidence is for the most part to the effect that these payments were made in consideration of Short's services in storing the boat when necessary and in keeping general watch over the boathouse; however, at one point in her testimony Mrs. Short referred to those payments as rent, indicating that the Shorts were asserting some kind

of ownership over the ground on which the boathouse stood, and other evidence tends to support that conclusion.

Respondent Hazel McHenry and her husband, George W. McHenry, also were residents of the town of Union and lived about four blocks from the boathouse. It appears that Bishop had employed Mr. McHenry to paint the boat and that he was using Bishop's key in order to get into the boathouse.

On the morning of May 4, 1943, at about a quarter of eight, Mr. McHenry left home, in his car, to go to the boathouse and work on the boat. In about twenty minutes he returned home, showing evidence of having recently received a terrific beating about his head, eyes, and face, as appears from the photographic exhibits in the case, and at the same time suffering intense pain. While first aid was being administered to him by members of his family, he was asked what had occurred. Respondent and two of the grown McHenry children testified at length as to what Mr. McHenry had related to them in response to their questioning. The testimony of all three witnesses was virtually the same. We shall quote only that of Cecil R. McHenry, the son, relating his father's account of what had occurred, as follows:

"He [the father] went out and started to fix the shaft on this speed boat he was working on and he had gone down on his knees underneath it. And when Short came out— the first he knew was when Short was behind him. He was on his knees underneath, looking at the propeller. Short asked him for the keys — told him to give him the keys. He said he wouldn't give them to him. He said he wouldn't give them to anyone but Bishop and Short said as long as he was on his property, he was working for him. Dad said, 'I never have worked for you and never would.' And Short said that he was trespassing and told him he was trespassing and Short said he had heard that my Dad had been spreading lies about him. And my Dad told him everything he said about him was the truth and he knew it. And Short hit him and hit him and knocked him down and hit him again when he was down and that is the last he remembered."

Later that same day, Mr. McHenry was taken from his home to the Shelton hospital, where he expired on May 6th. According to the testimony of the attending physician, Mr. McHenry died from the effects of the injuries received on May 4th.

Sometime between May 4th and May 6th, Mr. B. Franklin Heuston, then prosecuting attorney for Mason county, in company with a peace officer called at the Short home to investigate the charge of assault that had been made by Mr. McHenry in a complaint filed against Fred Short. At the trial of the present action in September, 1946, Mr. Heuston testified that on that occasion he discussed the matter of the occurrence at some length with Mr. and Mrs. Short, who together gave him their version of the affair, although Mrs. Short did most of the talking at that time. Mr. Heuston could not remember the exact words used by either Mr. Short or Mrs. Short at the time of the investigation, made three years previously, but he did state at length his recollection of what they together had told him on that inquiry. We quote from the record the material portions of his testimony on direct examination:

"The substance of their conversation to the best of my recollection was that there had been difficulties between Short and McHenry and that McHenry had been ordered to stay off Short's property or words to that effect; that Mr. Short found Mr. McHenry on his property working on this boat . . . There was a statement that thereafter an argument ensued between the two men. . . . Mr. Short made the statement that, 'I got mad and hit him.' That statement was made after the description of this altercation."

On redirect examination, he testified:

"The Court: Can you give me again your recollection of all of the things they said that the quarrel was about? The Witness: The only thing I can definitely remember, Your Honor, is that Short said there had been bad blood or difficulties between McHenry and themselves. In short, the position that they were taking at that time, quite apparently, was one of justification—not realizing the outcome of what had happened. They said that McHenry had been told to stay away from the Short property; that Mr. Short had

come upon him and found him upon the property; an argument ensued and Mr. Short, as result of this argument said, 'I got mad and hit him.' "

On recross-examination, the witness was interrogated by appellants' counsel as to whether appellants had stated to him that Mr. Short had ordered McHenry off the property at the time of the altercation. The witness could not recall the exact language used by the Shorts with reference to the matter, but, in response to a direct inquiry made by the court, he testified: "The tenor of the conversation was, he was trying to put him off the property, the exact words I can't recall."

It is but fair to say that Mrs. Short testified that, in the conversation with Mr. Heuston, nothing was said with reference to Mr. McHenry having been warned to stay off the property or with reference to any attempted eviction of McHenry. She further testified that neither she nor her husband had ever claimed that the boathouse stood on their property. This testimony would tend to support appellants' contention that when Fred Short committed the assault he was in no way acting for or on behalf of the community, or in furtherance of any community interest. The trial court had the right, of course, to believe, as the findings of fact indicate it did, the testimony given by respondent's witnesses, which was at variance with that of Mrs. Short. It may also be added that Fred Short, if present at the trial, did not testify.

With reference to the evidence as introduced by respondent, appellants first contend that the testimony concerning the statements made by the deceased to the members of his family after the assault was inadmissible, in that such statements were hearsay, self-serving, and not a part of the *res gestae*.

In *Beck v. Dye*, 200 Wash. 1, 92 P. (2d) 1113, 127 A.L.R. 1022, we considered the *res gestae* rule as it obtains in this state and set forth the elements essential to the admission of evidence concerning statements by persons participant in or present at a transaction, as follows:

"(1) The statement or declaration made must relate to the main event and must explain, elucidate, or in some way characterize that event; (2) it must be a natural declaration or statement growing out of the event, and not a mere narrative of a past, completed affair; (3) it must be a statement of fact, and not the mere expression of an opinion; (4) it must be a spontaneous or instinctive utterance of thought, dominated or evoked by the transaction or occurrence itself, and not the product of premeditation, reflection, or design; (5) while the declaration or statement need not be coincident or contemporaneous with the occurrence of the event, it must be made at such time and under such circumstances as will exclude the presumption that it is the result of deliberation, and (6) it must appear that the declaration or statement was made by one who either participated in the transaction or witnessed the act or fact concerning which the declaration or statement was made."

We think the instant case possesses all of these essential elements. Mr. McHenry's statement explained the event of the assault; it was a natural declaration or statement growing out of that event; it was a statement of the facts; it was an instinctive utterance of thought dominated or evoked by the occurrence; it was made under circumstances which reasonably excluded the presumption that it was the result of deliberation; and it was made by one who participated in the transaction.

The circumstances in this case with reference to the point under consideration are comparable to those in *Walters v. Spokane International R. Co.,* 58 Wash. 293, 108 Pac. 593, 42 L. R. A. (N.S.) 917, and *Riggs v. Northern Pac. R. Co.,* 60 Wash. 292, 111 Pac. 162, in both of which cases statements concerning the happening of distressful accidents were admitted as part of the *res gestae.* The facts and the holding of the court in the *Walters* case, *supra,* are accurately stated in the headnotes thereof, from which we quote:

"Statements made by the conductor of a derailed train to the effect that the accident was caused by the pulling of spikes, the spreading of the rails, and a 'bum track,' are admissible as part of the *res gestae,* where it appears that he was the company's chief representative in charge of the train, that he went forward and was the first to reach the scene of the accident, where he gave attention to two men

fatally injured, that he ran about a mile and occupied some time in sending a long distance telephone for relief, and walked back to the train, where he arrived almost two hours after the accident, at which time the statements were made under conditions of responsibility and anxiety tending to render them spontaneous and truthful, without their being the result of reflection or premeditation; the question of remoteness being within the discretion of the trial judge, and to be determined by the circumstances of each case."

Appellants further and finally contend that, in any event, the evidence did not constitute proof of any fact which would place liability upon the marital community.

■ By a long line of decisions it has become the settled law of this state that, if the tortious act of the husband be committed in the management of community property or for the benefit of the marital community, such community is thereby rendered liable for the act, under the doctrine of *respondeat superior. Bergman v. State,* 187 Wash. 622, 60 P. (2d) 699, 106 A.L.R. 1007, and cases therein cited; *Furuheim v. Floe,* 188 Wash. 368, 62 P. (2d) 706; *Mountain v. Price,* 20 Wn. (2d) 129, 146 P. (2d) 327.

■ Applying this rule to the facts of this case as the trial court was warranted in finding, and did find, them, we are of the opinion that the evidence was sufficient to establish liability on the part of the marital community. The evidence of the respondent as delineated above would reasonably support findings to the effect that the appellants claimed to own, or to have some interest in, the property on which the boathouse stood and where the altercation occurred; that appellants had warned McHenry to stay off the property; that, on discovering McHenry there on the day in question, Fred Short charged him with being a trespasser and demanded that he surrender the key to the boathouse; and that, upon McHenry's refusal to surrender the key, a quarrel ensued between the two men, culminating in the assault by Short. The evidence would also, and probably more forcefully, support findings to the effect that Fred Short was employed by E. K. Bishop as watchman of

the boathouse and boat, carrying a key to the boathouse, and receiving for his services the sum of three dollars a month; that, in the performance of his duties as watchman, he sought to eject McHenry from the premises by demanding of him that he surrender the key; and that, in consequence of McHenry's refusal to comply with the demand, a quarrel ensued culminating in a physical attack by Short.

The evidence may thus be viewed in two aspects: one, as indicating that Short was attempting to evict McHenry from property which appellants as a marital community claimed to own; and the other as indicating that Short was attempting to eject McHenry from premises which Short was employed and being paid to watch and guard. In whichever aspect we view the evidence, it can, and should, be said that Short was acting as the agent of the community, for in the one instance he was seeking to eject McHenry from community property or from what appellants claimed to be community property, and in the other he was performing an act claimed to fall within his duties as a watchman, in which capacity he would likewise be the agent of the community. Viewed in the first aspect, Short's act was committed in the management of community real property; considered in the second aspect, the act was committed in the prosecution of the community's business or employment as watchman of the premises.

It may be true that the actual assault was the result of Short's charge that McHenry had been spreading lies about him, and McHenry's response that everything he had said concerning Short was the truth. However, the altercation was one continuous affair from the time Short approached McHenry, accused him of trespassing, and demanded the surrender of the key, until finally he struck the blows which caused the death. Under these circumstances, we do not think it would be correct to say that he had wholly shed his character as agent of the community, and was then proceeding upon a misdeed for which he alone was chargeable. The situation presented by the facts in this case is a good illustration of an instance where the following language

from *Werker v. Knox*, 197 Wash. 453, 85 P. (2d) 1041, is applicable:

"Of recent years, the trend of the law has not been toward relieving the community from liability for the torts of its individual members, but has been quite definitely in the direction of finding ways and means of imposing such liabilities upon the community."

"For ways and means of imposing" liability upon the marital community in this instance, nothing more is necessary than to recognize what, in our opinion, the evidence demonstrates and what the trial court found, namely, that the assault was committed by Fred Short acting either in the management of community real property or else in the furtherance of the community's business of caring for another's property.

The judgment is affirmed.

MALLERY, C. J., BEALS, ROBINSON, and JEFFERS, JJ., concur.