[No. 35662.    Department One.    June 14, 1962.]

HENRY VERSTRAELEN, *Appellant*, v. DAVID KELLOG *et al.*, *Respondents.**

*Reported in 372 P. (2d) 543.

116

*Critchlow & Williams,* for appellant.

*Kenneth C. Hawkins,* for respondents.

Rosellini, J.—This lawsuit arose out of an incident which occurred on Highway 410, near Naches, on the night of October 30, 1959. The defendant, with his wife and child beside him, was driving his automobile on the highway and the plaintiff was driving behind him, proceeding in the same direction. The front of the plaintiff's vehicle collided with the back of the defendant's vehicle.

The plaintiff thereafter brought this action, alleging that the defendant had assaulted him and had subjected him to false imprisonment. The defendant denied the allegations of the complaint and cross-complained for damages to his car, which he alleged were caused by the plaintiff's negligence. The jury found in favor of the defendant.

Appealing from the judgment entered on this verdict, the plaintiff assigns error to the giving of certain instructions, including an instruction that the defendant's wife was dismissed from the case. This instruction was occasioned by the court's ruling that, as a matter of law, the community was not liable for the alleged acts of the defendant. The plaintiff contends that this was an erroneous ruling and that the community should be liable because it was benefited by the defendant's alleged acts.

The testimony of the plaintiff was to the effect that the defendant's automobile had stopped suddenly in front of him, causing the collision; that immediately after the collision, the defendant walked back to the plaintiff's automobile, took a swing at him through the open window, grabbed him, pulled him out of the car, took his car keys, and dragged him down the road where he left him lying.

beside his, the defendant's car. The plaintiff testified that the defendant had said to him, "you are not going anywhere," and "you will wait here until the patrolman gets here." He stated that he asked the defendant for his keys, but that he refused to give them to him.

Shortly thereafter, Marshal Aiken arrived at the scene; the officer told the plaintiff to get into his, the marshal's car and, after talking for a few minutes with the defendant, he drove into Selah, where the plaintiff was "inspected" by an officer of the State Patrol, who concluded that he was not drunk and told the marshal to release him. The marshal then took the plaintiff back to his car, gave him his keys, and allowed him to drive on to work.

The defendant denied that he had stopped suddenly on the highway, and said that the plaintiff had driven into the rear of his car in an apparent attempt to pass him. He denied that he had assaulted the plaintiff, or had told him to stay at the scene, or had taken his car keys. He said that he spent a minute or two in his car trying to quiet his child, who was crying, and that when he got out, he found a pick-up truck was stopped behind the plaintiff's car, and that the driver of it, Ronald Seal, was talking with the plaintiff who was out of his car. According to the defendant, Seal got into the plaintiff's car and drove it off to the side of the road in front of the defendant's car.

He testified that the plaintiff, using abusive language, said that the accident was his fault and asked him why he had stopped. The defendant concluded that the plaintiff was drunk and that he should say as little as possible to him; he therefore got back into his own car and closed the window. Seal told him he thought the plaintiff was drunk and that he would look for an officer. Seal, recognizing the defendant at this point, reminded him that they had been in high school together. He then drove off to find an officer, leaving the plaintiff and the defendant seated in their respective cars. Two or three times the plaintiff went to the defendant and demanded his car keys. Each time the defendant told him he did not have them.

The defendant, in his testimony, denied that he had told the plaintiff to remain at the scene, and said that he had simply told him to go to his car and leave the defendant and his wife alone.

The defendant's account of what took place after the marshal arrived at the scene was substantially in agreement with the accounts given by the marshal and the plaintiff.

Seal testified that the plaintiff's vehicle had passed him at a high rate of speed, and that he observed it in front of him for some time before it disappeared over a hill. He said that when he came upon the scene of the collision, he parked behind the plaintiff's car and went up to speak to him. He told the plaintiff that his car was stopped in an extremely dangerous place, and asked him to move it off the road. He could get no response, and asked the plaintiff if he would allow him to move it. Still, all the plaintiff said was "I am in a hurry. I got to go," and words to that effect. So, Seal assisted him from the car, took his keys, and moved the car over to the side of the road. His testimony concerning the conversation that he had with the defendant was substantially the same as that of the defendant. He stated that he then drove into Naches and found a patrol officer to whom he reported the accident. He told the officer he thought that the plaintiff was drunk, left the keys with the officer, and proceeded on his way.

Marshal Aiken told of receiving a radio call from the highway patrol, and said that when he responded he was told that an altercation on the highway had been reported; that apparently someone was drunk; and that he should go to the scene. When he arrived, he found the plaintiff and defendant seated in their automobiles. He questioned the plaintiff, decided he was not drunk, and asked him if he would like to be driven into town to get his keys. The plaintiff said that he would, and got into the marshal's car. The marshal asked the defendant what had happened, and the defendant said that the plaintiff's car had struck the rear of his car, which was moving at the time.

The marshal asked the defendant if the plaintiff was

drunk, and the defendant said that he did not know. He did not ask to have the plaintiff arrested. The marshal did not think that the plaintiff was drunk when he drove him into town, where he was questioned by the patrol officer, who also decided that he wasn't intoxicated. The plaintiff accepted the marshal's offer to take him back to his car. When they arrived at the scene, the defendant had left. This ended the incident.

The plaintiff made no complaint to either Seal or the officers that he had been assaulted or in any way abused by the defendant.

█ It will be seen that the gist of the plaintiff's complaint against the defendant was that the defendant had assaulted him and had subjected him to false imprisonment when he took his car keys. This was the conduct complained of in the complaint. The trial court determined that inasmuch as the suit was based upon intentional torts, and there was no proof that they were committed for and on behalf of the community, the rule of *Newbury v. Remington*, 184 Wash. 665, 52 P. (2d) 312, was controlling.

In that case, the plaintiff had attempted to pass the defendant on a city street, and the defendant drove his automobile in such a manner as to prevent the plaintiff from doing so. He persisted in this conduct and eventually forced the plaintiff's automobile off the pavement. When the plaintiff stopped, the defendant got out of his automobile, went over to him, accused him of a traffic violation, and threatened to have him arrested. Then he said, "I have changed my mind about having you arrested and will take care of you myself." Whereupon he reached through the open window of the plaintiff's automobile and with one hand grabbed the glasses from the plaintiff's nose, and at the same time struck the plaintiff a violent blow across the mouth. He threw the plaintiff's glasses to the pavement, breaking and ruining them.

In considering the question of the liability of the defendant marital community, this court said (quoting from *DePhillips v. Neslin*, 139 Wash. 51, 245 Pac. 749):

" 'The controlling consideration is, was the tortious act

of Neslin, the husband, committed by him in the management of the community property or for the benefit of the community? If so committed, the community must be regarded as having committed the act and thereby rendered itself liable therefor. . . .'

"Applying the rule to the present case, it cannot be said that the tort committed by the respondent husband grew out of or was connected with his management of the community property, nor was it for the benefit of the community—the tort was committed by him as an aggressor wholly beyond and without any such consideration."

In that case, as in this, the automobile was not used as an instrument of the tort. The defendant had alighted from it and gone back to the plaintiff's automobile. We find the cases indistinguishable on the facts. The rule of the *Newbury* case has been recently reaffirmed in *Smith v. Retallick*, 48 Wn. (2d) 360, 293 P. (2d) 745. The trial court ruled correctly in dismissing the defendant wife from this action.

■ There is next assigned as error the giving of an instruction to the effect that, if the plaintiff violated certain rules of the road (RCW 46.60.040 and 46.60.080, relating to following and passing vehicles on the road), this would constitute a breach of the peace, entitling the defendant to arrest the plaintiff and use reasonable force in effecting the arrest. It is the position of the plaintiff that the mere violation of a traffic regulation is not, in and of itself, a breach of the peace. We need not decide the merits of this contention,[1] inasmuch as the record clearly reveals that

---

[1] There is a surprising dearth of authority on the question whether a citizen may arrest another citizen for a traffic violation in the absence of express statutory authorization. It would seem that the violation must be of such a nature that it constitutes an actual breach of the peace as that term is defined at common law, and that whether such a breach has occurred should be a question for the jury. In support of this view, we find an interesting case in 1 Peters, Circuit Court Reports, 390, the case of *United States v. Hart*, decided in 1817. The court held that it was for the jury to determine whether the U. S. mail stage was driven through the city of Philadelphia at such a rate and in such a manner as to cause a breach of the peace, entitling the constable to stop and arrest the driver. In discussing the question, the court said:

"The evidence offered by the defendant was very strong, to prove

there was neither allegation nor proof that the defendant accosted the plaintiff for the purpose of arresting him. While Seal's act could be termed a citizen's arrest, he was not made a party to this action. The defendant denied that he had struck the plaintiff or restrained him in any manner. Since the citizen's right to arrest was not interposed as a defense in the case, the defendant was not entitled to an instruction on this phase of the law.

While the evidence is more than sufficient to sustain the jury if it found that the defendant's version of the incident was the correct one, we cannot be sure that the jury did not believe the plaintiff's version, but exonerated the defendant because it was led by the court's instruction to conclude that his acts constituted a citizen's arrest. For this reason a new trial must be ordered.

Error is also assigned to the refusing of an instruction on the joint liability of joint tort-feasors. Since there was but one defendant in the case, and since his acts were the only acts complained of, it was not error to refuse this instruction.

Finally, it is contended that the proof was insufficient to establish the defendant's damages on his cross-complaint, because the defendant himself was the only witness who testified concerning the amount of the loss. No argument nor authorities are submitted in support of this contention, and we will not consider it. *Wickre v. Allen,* 58 Wn. (2d) 770, 364 P. (2d) 911.

The judgment is reversed and the cause remanded for a new trial.

FINLEY, C. J., DONWORTH, WEAVER, and HAMILTON, JJ., concur.

---

that the stage was passing very rapidly through Market street, at the time it was stopped by the defendant; some of the witnesses supposed it to be at the rate of eight or nine miles an hour."