462 P.2d 395

Don William HOWE and Hannah Lee Howe, his wife, Appellants,

v.

Homer HAUGHT and Betty Jo Haught, his wife, Appellees.

No. 2 CA–CIV 383.

Court of Appeals of Arizona, Division 2.

Dec. 19, 1969.

Rehearing Denied Jan. 15, 1970.

Review Denied Feb. 17, 1970.

Welliever & Smith, by Robert J. Welliever, Phoenix, for appellants.

Cavness, DeRose, Senner & Foster, by John W. Rood, Phoenix, for appellees.

HATHAWAY, Judge.

The appellants (hereinafter referred to as plaintiffs) instituted a lawsuit against the appellees (hereinafter referred to as defendants) to recover compensatory and punitive damages for injuries sustained by the plaintiff-husband as a result of the

defendant-husband's allegedly wrongful assault and battery.

The plaintiff's complaint alleged that the acts of the defendant-husband "were committed in pursuance of community affairs." The defendants' responsive pleading denied this allegation. The plaintiffs' pre-trial memorandum delineated certain factual issues, including:

"C. The issue as to the applicability of any liability to the marital community of Homer and Betty Jo Haught."

The defendants' pre-trial memorandum recited, inter alia:

"It is the further position of the defendants that no act of the defendant HOMER HAUGHT was done in furtherance of any community purpose and that in no event could the community composed of the defendants, husband and wife, be responsible to the plaintiff in any fashion."

The pre-trial order recited that the issues to be tried were those set forth in the pleadings and pre-trial memoranda. The case was tried to a jury and submitted on general verdicts and the followng interrogatory:

"Did the Defendant, Betty Jo Haught, encourage the Defendant, Homer Haught, to enter into an argument or altercation with Don Howe at or near the plaintiff's premises at the time in question?"

The jury returned a verdict in favor of the plaintiff and against the defendants in the amount of $5,000 compensatory damages and $3,700 punitive damages and responded to the interrogatory in the negative.

At the close of all the evidence, the defendants had made a motion for judgment in favor of the marital community and in favor of Betty Jo Haught, individually. This motion was taken under advisement by the court. The formal written judgment awarding the plaintiffs the sum of $8,700 against Homer Haught, individually, recites that it was based upon the verdict, the interrogatory and the defendants' motion. It further directed entry of judgment against the plaintiffs and in favor of the marital community composed of the defendants Homer Haught and Betty Jo Haught, his wife, and against the plaintiffs in favor of the defendant Betty Jo Haught, individually.

■ The gravamen of plaintiffs' complaint on appeal is the release of the marital community of Homer and Betty Jo Haught from liability.[1] They contend that the general verdict of the jury finding against the defendants and for the plaintiff is final and binding for the reason that "whether liability for the tort was a community obligation was placed in issue by the pleadings." Rule 49(h), Rules of Civil Procedure, 16 A.R.S., provides in part:

"The court may submit to the jury, together with appropriate forms for a general verdict, written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict. The court shall give such explanation or instruction as may be necessary to enable the jury both to make answers to the interrogatories and to render a general verdict, and the court shall direct the jury both to make written answers and to render a general verdict. When the general verdict and the answers are

---

1. In their answering brief, the defendants have presented various grounds for dismissal of this appeal which we deem unnecessary to detail. They urge dismissal because of certain non-jurisdictional defects in the prosecution of this appeal. We do not consider the defendants' objection to be well-taken, particularly in view of the improper format and presentation of their motion. See In Re Estate of Henry, 6 Ariz.App. 183, 430 P.2d 937 (1967); Bernstein, "The Disposition of Civil Appeals in the Supreme Court", 5 Ariz.L.Rev. 175; Rule 7, Rules of the Supreme Court, 17 A.R.S. Furthermore, the mere misdesignation in the notice of appeal as to the date of judgment is considered a mere technical error which does not ipso facto invalidate the appeal and in the absence of a showing of prejudice, dismissal is inappropriate. Hanen v. Willis, 102 Ariz. 6, 423 P.2d 95 (1967).

harmonious, the court shall direct the entry of the appropriate judgment upon the verdict and answers. When the answers are consistent with each other but one or more is inconsistent with the general verdict, the court may direct the entry of judgment in accordance with the answers, notwithstanding the general verdict or may return the jury for further consideration of its answers and verdict or may order a new trial. * * *"

■■ Thus we see that under this rule the trial court has discretion to choose the means of correcting an inconsistency between a special interrogatory and the general verdict, i. e., by (1) reconciliation of the general verdict with the special finding, (2) resubmitting the verdict and finding to the jury, or (3) ordering a new trial. See Cundiff v. Washburn (7th Cir. 1968), 393 F.2d 505; Phillips Chemical Company v. Hulbert (5th Cir. 1962), 301 F.2d 747. Of course, if the special findings can be reconciled with the general verdict, the court should do so. Golden North Airways v. Tanana Publishing Company (9th Cir. 1955), 218 F.2d 612, 15 Alaska 303; Kirkendoll v. Neustrom (10th Cir. 1967), 379 F.2d 694. Where, however, there is an irreconcilable inconsistency between the special findings and the general verdict, the former control. 53 Am.Jur., Trial § 1083.

■ Here, of course, it is arguable that the special finding to the effect that the defendant-wife had not encouraged her husband to enter into an argument or altercation with the plaintiff is not completely inconsistent with the general verdict against both defendants. If the husband's tort was committed in furtherance of the community's interest or with the knowledge, consent or ratification of his wife, the community of Homer and Betty Jo Haught would be liable. Rodgers v. Bryan, 82 Ariz. 143, 309 P.2d 773 (1957); Shaw v. Greer, 67 Ariz. 223, 194 P.2d 430 (1948); McFadden v. Watson, 51 Ariz. 110, 74 P.2d 1181 (1938). There-

fore lack of encouragement by the wife would not automatically absolve the community.

■ The plaintiffs did object to the special interrogatory in the form in which it was given, requesting the trial court to include therein the word "consent." However, they have not favored this court with a complete transcript of the trial testimony, but rather only a limited portion thereof, namely the testimony of both defendants. We therefore indulge in the presumption that the excluded testimony would not support a finding of community liability and confine our consideration to the portion of the testimony which has been made part of the record on appeal.

■ We have carefully scrutinized the defendants' testimony and cannot agree that it discloses that Homer Haught's assault on the plaintiff Don Howe was in pursuance of community affairs. It is true that where a husband commits an assault in the management of or for the benefit of the community, the community is liable. Shaw v. Greer, supra; McHenry v. Short, 29 Wash.2d 263, 186 P.2d 900 (1947); LaFramboise v. Schmidt, 42 Wash.2d 198, 254 P.2d 485 (1953); Hansen v. Blevins, 84 Idaho 49, 367 P.2d 758 (1962); 41 C.J.S. Husband and Wife § 523. The controlling question, in determining liability of the marital community for the tort of the spouse, is whether the tort is calculated to be, is done for, or results in a benefit to the community or is committed in the prosecution of community business. Brink v. Griffith, 65 Wash.2d 253, 396 P.2d 793 (1964); Verstraelen v. Kellog, 60 Wash.2d 115, 372 P.2d 543 (1962).

■ Although the plaintiffs argue that the altercation and ensuing assault arose out of the dispute between the plaintiffs and the defendants concerning the latter's cattle, we find no evidence or inferences therefrom which would so indicate. The only testimony bearing on the subject is that of the defendant-wife which refers

to a past controversy concerning these cattle. We find nothing in the limited evidence presented to us to support an inference that the argument between Howe and Haught concerned the defendants' cattle.

The plaintiffs further contend that the defendant-wife consented to her husband's commission of the tort. Assuming arguendo the truth of the defendants' testimony, we find no evidence of such consent. The evidence discloses only that the husband's brother was involved in a fight with the plaintiff's tenant on the plaintiffs' property and that the plaintiff-husband sent a little boy to fetch the defendant-husband from a restaurant bar located across the street. The defendant-wife observed the fight between her brother-in-law and the tenant and heard the plaintiff send for her husband. She did not, as plaintiffs would have us believe, send for her husband herself. We are unable to equate the defendant-wife's non-intervention at this juncture as being "knowledge, consent or ratification" of her husband's subsequent aggression. We see no distinction between the facts of this case and those in Newbury v. Remington, 184 Wash. 665, 52 P.2d 312 (1935), where the defendant-husband, driving with his wife, forced the plaintiff-motorist to stop, got out of the car and assaulted the plaintiff. The Washington Supreme Court, in declining to impose liability on the marital community, held that the tort was committed by the husband as an aggressor and that it neither grew out of nor was connected with his management of the community property nor was it for the benefit of the community.

Plaintiffs argue that the trend of the law is in the direction of finding ways and means of imposing liability upon the com-

munity for the torts of its individual members. See Hays v. Richardson, 95 Ariz. 64, 386 P.2d 791 (1963); Werker v. Knox, 197 Wash. 453, 85 P.2d 1041 (1938); DePinto v. Provident Security Life Insurance Company (9th Cir. 1967), 374 F.2d 50. However, although courts may strain to find the requisite "community purpose," we cannot so construe the instant factual situation.

There being no evidence in the record before us to support a finding of community liability we find no error in the trial court's entry of judgment in favor of the marital community.[2]

Judgment affirmed.

KRUCKER, C. J., concurs.

HOWARD, Judge (special concurring).

I agree with the decision only because we are bound by the decisions of our Supreme Court. I am, however, convinced that we are perpetuating an injustice and a wrong rule of law. I believe that the rule should be that when a spouse commits a tort, which would not subject the entire community property to liability, that at least the spouse's one-half interest in the community property should be subject to liability.

A.R.S. § 25–215, subsec. B states:

"The community property of the husband and wife is liable for the community debts contracted by the husband during marriage unless specially excepted by law."

Our court has in the past equated "community debts contracted" with tortious conduct. This was not the interpretation of the Spanish law whence our law on community property originated. See note 1, supra. In Gardner v. Gardner, 95 Ariz. 202, 388 P.2d 417 (1964), Justice

---

2. The plaintiffs argue, and we concede that the argument has validity, that, where, as here, all the property of the defendants is held as community property, the wrongdoing spouse is actually relieved of liability and the injured party goes uncompensated for the wrong. The

Spanish community property law avoided this harshness by rendering liable the wrongdoing spouse's separate property *and* half share in the community property. 1 deFuniak, Principles of Community Property § 181.

Lockwood, in holding that alimony was not a "contracted" debt within the meaning of A.R.S. § 25–216, subsec. B, recognized that the section of our code deals only with obligations arising ex contractu and not ex delicto. I frankly do not think that biting off a piece of someone's nose can be legitimately characterized as an action arising out of a contractual relationship.

Our present rule creates an injustice because the innocent victim is denied recovery if the wrongdoing spouse has no separate property, which is often the case in this jurisdiction. I do not believe that the public policy of this state requires that the wrongdoer be allowed to hide behind the skirts of misapplied dogma.