Robert B. THORP, an individual,
Plaintiff,

v.

HOME HEALTH AGENCY—ARI-
ZONA, INC., d/b/a Team Select Home
Care, a Florida corporation; Michael
W. Lovell, in his official and individu-
al capacities, and Stacy P. Lovell, hus-
band and wife; Jean Chicken, in her
official capacities, and John Doe
Chicken, husband and wife; John
Does and Jane Does 1–X; White Cor-
porations 1–X; Black Limited Liabili-
ty Companies1–X; and Blue Partner-
ships 1–X, Defendants.

No. CV 12–02193–PHX–MHB.

United States District Court,
D. Arizona.

March 18, 2013.

Joshua William Carden, Davis Miles McGuire Gardner PLLC, Tempe, AZ, for Plaintiff.

Dawn Christel Valdivia, Marian M. Zapata–Rossa, Quarles & Brady LLP, Phoenix, AZ, for Defendants.

**ORDER**

MICHELLE H. BURNS, United States Magistrate Judge.

Pending before this Court is Defendants' Motion to Dismiss Counts III, IV, and V of Plaintiff's Complaint (Doc. 9), and Defendants' Motion to Dismiss Defendants Michael W. Lovell, Stacy P. Lovell, Jean Chicken, John Doe Chicken (hereinafter "individual defendants"), and Fictitious Defendants (Doc. 10). Plaintiff has filed a consolidated Response (Doc. 14), and Defendants have filed a consolidated Reply (Doc. 19). Plaintiff does not object to the dismissal of the Fictitious Defendants from the Complaint, or the dismissal of the individual Defendants from Counts I and II of the Complaint, and therefore the Court will order the dismissal of the Fictitious Defendants from the Complaint, and the individual Defendants from Counts I and II of the Compliant.

Defendants move, pursuant to Fed. R.Civ.P. 12(b)(6) to dismiss Counts III, IV, and V against Home Health Agency—Arizona, Inc., d/b/a/ Team Select Home Care (hereinafter "Team Select"), and Count III against Team Select and the individual defendants, for failure to state a claim upon which relief can be granted.

Plaintiff Thorp was employed by Defendant Team Select as a Clinical Supervisor from September 27, 2010, through approximately December 31, 2010. Plaintiff alleges in his Complaint that during his tenure with Team Select, he was routinely subjected to outrageous religious discrimination and sexual harassment. These allegations are the basis for the present lawsuit Plaintiff has filed against Defendants, which includes claims for: (I) Title VII discrimination and harassment; (II) retaliation; (III) intentional infliction of emotional distress; (IV) negligent hiring, retention, or supervision; and (V) breach of the covenant of good faith and fair dealing.

**RULE 12(b)(6) STANDARD.**

The Court may dismiss a complaint for failure to state a claim under Rule 12(b)(6), Fed.R.Civ.P., for two reasons: 1) lack of a cognizable legal theory, or 2) insufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1988). To adequately state a claim, a complaint must meet the requirements of Rule 8(a)(2), Fed.R.Civ.P., which requires a "short and plain state-

ment of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id.* at 555 n. 3, 127 S.Ct. 1955 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1202, pp. 94, 95(3d ed. 2004)). Rule 8's pleading standard demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955).

In deciding a motion to dismiss under Rule 12(b)(6), the Court must construe the facts alleged in the complaint in the light most favorable to the drafter of the complaint and the Court must accept all well-pleaded factual allegations as true. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir.2000). Nonetheless, the Court does not have to accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

A plaintiff alleging intentional infliction of emotional distress in Arizona must demonstrate three elements: (1) the defendant's conduct was extreme and outrageous, (2) the defendant intended to cause emotional distress or "recklessly disregarded the near certainty" that his conduct would produce such distress, and (3) the defendant's conduct actually caused severe emotional distress. *Bodett v. Cox-Com, Inc.*, 366 F.3d 736, 746 (9th Cir. 2004); *Ford v. Revlon*, 153 Ariz. 38, 734 P.2d 580, 585 (1987) (*en banc*); *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1058 (9th Cir.2007). The extreme and outrageous element is met when a defendant's conduct is "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 183 Ariz. 550, 905 P.2d 559, 563 (Ariz.App.1995) (citations omitted).

The third prong of the claim requires that the defendant's conduct actually caused severe emotional distress. Because "severe emotional distress" is not readily capable of precise legal definition, Arizona courts apply a case-by-case analysis with respect to these determinations. *See Lucchesi v. Frederic N. Stimmell, M.D., Ltd.*, 149 Ariz. 76, 716 P.2d 1013, 1016 (1986). "[A] line of demarcation should be drawn between conduct likely to cause mere 'emotional distress' and that causing 'severe emotional distress.'" *Midas Muffler Shop v. Ellison*, 650 P.2d 496, 501 (Ariz. App.1982) (citation omitted). *See Spratt v. N. Auto. Corp.*, 958 F.Supp. 456, 461 (D.Ariz.1996) (crying, being stressed and upset, and having headaches is not enough to establish severe harm); *Bodett*, 366 F.3d at 747 (shock, stress, moodiness, and

estrangement from friends and coworkers is not severe); *Midas Muffler Shop,* 133 Ariz. at 199, 650 P.2d 496 (difficulty sleeping is insufficient to establish severe emotional distress). *But see Ford,* 734 P.2d at 585 (anxiety that results in physical symptoms such as high blood pressure, chest pains, fatigue, and dizziness does constitute severe emotional distress); *Pankratz v. Willis,* 155 Ariz. 8, 744 P.2d 1182, 1191 (Ariz.App.1987) (anger and depression due to disappearance of child, coupled with physical ailments such as headaches and hemorrhoids constitute severe emotional distress).

Plaintiff alleges many facts in his Complaint (Doc. 1–1, ¶s 15–116) in support of his claim, the most egregious of which include: almost immediately after Plaintiff began working for Team Select, Mike Lovell, president and director of Team Select made the topic of drug use and abuse, sex and sexual activity, the mockery of religious and moral stances on private issues, and/or the religious and moral choices of the Team Select employees almost daily topics of conversation; on one occasion Lovell exclaimed to others in the office "Hey! Did you know that [Plaintiff] is a Jehovah's Witness?;" Lovell also exclaimed that he didn't want the Mormons and Jehovahs consorting against him; on another occasion Lovell called Plaintiff into his office and asked Plaintiff if he would "do" the office manager if given the opportunity; when Plaintiff tried to get him to change the subject Lovell persisted in talking about how he would "do her," and that if a female co-worker borrowed money from Lovell he should make him pay him back with sexual favors; Plaintiff reported the abuse to his supervisors, who advised him to just try to ignore Lovell; on another occasion, during an office meeting presided over by Lovell, employees were encouraged to register to vote; when Plaintiff advised Lovell that Jehovah's Witnesses do not vote, Lovell responded, "Why can't you vote?! It's your f* * *ing right as an American!" Plaintiff reported this incident to the Human Resources Director; in October, 2012, Plaintiff was required to attend a mandatory office meeting at a restaurant, which was attended by Lovell and Defendant Jean Chicken, a supervisory employee, and possible owner of Team Select, and administrator; during the meeting Lovell blurted out that Plaintiff "is a Jehovah and goes door to door."; Defendant Chicken told Plaintiff afterwards that she "cringes every time [Lovell] does something like that because it's a lawsuit just waiting to happen."

Plaintiff also alleges that Lovell once called him into his office to discuss "women in the office," and advised Plaintiff that one of the supervisors "goes around f* * *ing humping everything that moves."; Lovell also ordered all employees into an office to watch a training video which turned out to be an explicit version of the song "F* * * You," which was laced with profanity; on another occasion Lovell approached Plaintiff's desk and loudly announced, "You know why I don't like Jehovahs? They wake up on Saturday's! Why do you guys do that Why don't you guys believe in celebrating birthdays!? That's dumb!"; Plaintiff had another conversation with Defendant Chicken complaining about the religious harassment and sexual conversation, and Defendant Chicken merely advised Plaintiff to stay out of Lovell's way. Plaintiff again complained to the Human Resources Director, who advised Plaintiff that Lovell was not trying to harass people. In December, when the office staff was decorating an office Christmas tree, Lovell instructed Plaintiff to place something on the tree, which Plaintiff refused to do because of his religious beliefs. Lovell then said loudly in front of everyone, "Is the Christmas tree the f* * *ing Devil? ... It's only a tree and this is a

f* * *ing team-building activity! If Mormons can put stuff on the f* * *ing tree, why can't Jehovahs?" Plaintiff again tried to lodge a complaint with his immediate supervisor, who was again dismissive of Plaintiff's grievance.

When office staff presented Lovell with a Karaoke machine as a Christmas gift, Lovell put the microphone to his mouth and walked back and forth saying "You will f* * *ing burn in hell if you don't listen to Jehovah!" Lovell then asked Plaintiff in front of the entire office staff why he believed in hell, and when Plaintiff tried to walk away, Lovell blocked him from doing so. During a work function at a local resort, Lovell engaged in a conversation in front of Plaintiff about sexually "fisting" the waitress, and asked Plaintiff, "I wonder what it would be like if god was fisting the office manager? What do you think?" Lovell asked Plaintiff if Jehovahs go door-to-door like the Mormons, and if Plaintiff thought "god would fist the office manager and what it would be like if god fisted women." Jean Chicken approached the group and stated, "[Plaintiff], that's not how you get laid!"

Despite Plaintiff's many complaints, no supervisor took action on Plaintiff's behalf, other than to advise Plaintiff to avoid or ignore Lovell, which was impossible to do given that Lovell was Plaintiff's supervisor. Plaintiff also alleges that, as a result of his complaints about Lovell's behavior, his job duties were significantly escalated, requiring him to do twice the work of someone else in his position, and to perform other tasks not required of other similarly-ranked employees, as well as work on holidays that were identified as non-working holidays in the employee handbook, and, in addition, his previously-approved time off was cancelled. On December 31, 2010, after being told he would be working all of New Year's weekend, Plaintiff resigned. As a result of this harassment, Plaintiff claims he was in a state of deep depression for several months and suffered physical ailments, that required medical treatment, and caused him to incur medical bills.

The Court finds that because reasonable minds could differ about whether the above-alleged conduct is sufficiently outrageous, dismissal on this basis is inappropriate. *See Nelson v. Phoenix Resort Corp.*, 181 Ariz. 188, 888 P.2d 1375, 1386 (Ariz.App.1994). The facts alleged also support a plausible claim of liability of Team Select, given the allegations that Lovell and Chicken are principles of the corporation, and given the inaction on the part of Team Select in the face of Plaintiff's multiple complaints. *See State of Arizona v. Schallock*, 189 Ariz. 250, 941 P.2d 1275, 1279 (1979). The Court furthermore finds that Plaintiff has sufficiently plead facts to support a finding that the Defendants' actions were intentional or in reckless disregard that Plaintiff would experience severe emotional distress. It is a closer question whether or not Plaintiff has alleged sufficient facts to demonstrate that he suffered severe emotional distress. The Court finds that by averring that he was in a state of deep depression for six months and suffered physical ailments that required medical treatment and caused him to incur medical bills, Plaintiff has met the threshold. The Court will deny Defendants' motion to dismiss Count III of the Complaint.

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

■ Plaintiff alleges in his Complaint that as an employee of Team Select, "the law of Arizona treats the employment relationship as contractual in nature," and therefore "carries the implied covenant of good faith and fair dealing." (Doc. 1–1, at 20.) Plaintiff alleges that Team Select

breached the covenant by the actions of Lovell and Team Select described in his complaint and discussed above. Team Select argues that Plaintiff's claim is barred by the Arizona Employment Protection Act ("AEPA"), A.R.S. § 23–1501. The AEPA limits claims for wrongful employment action to the following three categories: (1) claims for breach of a written employment contract; (2) claims that the employer terminated the employee in violation of an Arizona statute; and (3) claims that the employer terminated the employee because of the employees' refusal to violate an Arizona statute or the Arizona Constitution or for providing information that the employer is violating an Arizona statute or the Arizona Constitution. A.R.S. § 23–1501(3)(a)–(c). Team Select argues that Plaintiff's claim cannot survive because only breaches of written employment contracts are actionable, and Plaintiff does not claim he had a written employment contract with Team Select.

Plaintiff cites *White v. AKDHC, LLC,* 664 F.Supp.2d 1054 (D.Ariz.2009) for the proposition that he does not have to allege a written employment contract for his claim to survive, and that "a viable claim for breach of the implied covenant may lie if a plaintiff is alleging that conduct other than the termination itself breached the covenant." 664 F.Supp.2d at 1065. As Team Select points out in their Reply, *White* is not persuasive, as the cited passage from the case is merely dicta, does not provide guidance for such a claim if such a claim were in fact viable, and in any event the passage cites a Ninth Circuit case that relies upon California law. More to the point, the Arizona Supreme Court has held that the AEPA is the exclusive remedy for employment terminations that violate public policy statutes. *Cronin v. Sheldon,* 195 Ariz. 531, 991 P.2d 231, 241 (1999). The Court in *Cronin* pointed out that, importantly, the AEPA does not preclude recovery of compensatory damages

for wrongful termination through common law tort remedies, such as "intentional infliction of emotional distress, ... negligent infliction of emotional distress, ... interference with contractual relations, ... or defamation." *Id.* (internal citations omitted).

This Court finds that Plaintiff has not sufficiently plead a claim for breach of contract of good faith and fair dealing and will dismiss that claim.

## NEGLIGENT HIRING, RETENTION, OR SUPERVISION

■ Arizona does not recognize a claim by an employee against an employer for negligent hiring, retention, or supervision. *See Olive v. City of Scottsdale,* 1995 WL 599186 (D.Ariz.1995) (dismissing plaintiff's claim for negligent investigation and supervision, finding Arizona has never recognized such a claim); *Irvin Investors, Inc. v. Superior Court in and for County of Maricopa,* 166 Ariz. 113, 800 P.2d 979 (Ariz.App.1990) (finding that plaintiff could not maintain an action against her employer for negligent hiring, supervising and retaining); *Mosakowski v. PSS World Medical, Inc.,* 329 F.Supp.2d 1112 (D.Ariz. 2003) (holding that "Arizona law precludes an employee from bringing a torn action based on negligent hiring and negligent retention against her employer"). Claims for negligent hiring, retention or supervision are precluded by the exclusive remedy of the Arizona workers' compensation statute. A.R.S. § 23–1022. *Irvin Investors, Inc.,* 800 P.2d at 981; *Mosakowski,* 329 F.Supp.2d at 1131. Plaintiff does not allege in his Complaint that he has made a claim for workers' compensation under the Arizona workers' compensation statutes, or that if he has, he has been denied relief.

Plaintiff cites several cases in which he claims Arizona courts have recognized a claim for negligent hiring, retention or su-

pervision; however, all of the cases cited involved a third-party, non-employee, filing a claim against an employer for the negligent hiring, retention or supervision of an employee-tortfeasor. This stands to reason, as such a plaintiff would have no claim for workers' compensation.

This Court finds that Plaintiff has not sufficiently plead a claim for negligent hiring, retention, or supervision, and will dismiss that claim.

## LIABILITY OF STACY LOVELL AND JOHN DOE CHICKEN

■ The community property of a husband and wife "may be liable for an intentional tort committed by one of the spouses where the intent and purpose of the activity leading to the commission of the tort was to benefit the community interests." *Garrett v. Shannon*, 13 Ariz.App. 332, 476 P.2d 538, 539 (1970). Team Select argues that Defendants Stacy Lovell and John Doe Chicken, the spouses of Defendants Michael Lovell and Jean Chicken, should be dismissed from Count III because there is no allegation in Plaintiff's Complaint that the tort committed by Michael Lovell and Stacy Chicken was calculated to be, was done for, or resulted in a benefit to the marital community or was committed in the prosecution of community business. *See, Howe v. Haught*, 11 Ariz.App. 98, 462 P.2d 395, 397 (1969); *Cadwell v. Cadwell*, 126 Ariz. 460, 616 P.2d 920, 923 (Ariz.App.1980) ("The law is settled in Arizona that the community property of both spouses may be liable for an intentional tort committed by one of the spouses where the intent and purpose of the activity leading to the commission of the tort was to benefit the community interests.") (citation omitted). There is no allegation in the Complaint, and no inference or inferences that can be drawn from the allegations contained therein, sufficient to support a claim of liability against the spouses of Defendants Michael Lovell and

Jean Chicken, and the Court will order them dismissed from Count III of the Complaint.

Wherefore, and for the reasons stated herein,

**IT IS ORDERED** that Defendants' Motion to Dismiss Counts III, IV, and V of Plaintiff's Complaint (Doc. 9), and Defendants' Motion to Dismiss Defendants Michael W. Lovell, Stacy P. Lovell, Jean Chicken, John Doe Chicken (hereinafter "individual defendants"), and Fictitious Defendants (Doc. 10), are **GRANTED, IN PART.**

**IT IS FURTHER ORDERED** dismissing Counts IV and V of Plaintiff's Complaint.

**IT IS FURTHER ORDERED** dismissing the Fictitious Defendants: John Does and Jane Does 1–X, White Corporations 1–X, Black Limited Liability Companies 1–X, and Blue Partnerships 1–X, from the Complaint, and Defendants Michael W. Lovell, Stacy Lovell, Jean Chicken, and John Doe Chicken, from Counts I and II of the Complaint.

**IT IS FURTHER ORDERED** dismissing Defendants Stacy Lovell and John Doe Chicken from Count III of the Complaint.

**IT IS FURTHER ORDERED** denying Defendants' Motion to Dismiss Count III.