194 P.2d 430

**SHAW v. GREER et al.**

No. 4996.

Supreme Court of Arizona.

June 1, 1948.

Urban R. Miller, of Williams, for appellant.

Dodd L. Greer, of Holbrook, for appellees.

LaPRADE, Justice.

This appeal is prosecuted, by the plaintiff below, from an order of the superior court of Navajo County quashing certain writs of garnishment theretofore sued out against Navajo County and the City of Wins-

low, and releasing funds owed to defendant Ben Pearson, Navajo County deputy sheriff, and defendant A. T. Hartley, chief of police of the City of Winslow, impounded under the writs. The reason for the order as set forth by the court in its minute entry was " * * * that community property is not liable for the husband's torts as public officers which could not and did not benefit the community." Plaintiff in suing out the writs was attempting to effect a partial collection of an indebtedness owed to him by defendants Pearson and Hartley. The writs were secured in the same cause of action which plaintiff had theretofore successfully prosecuted to judgment against Hartley, Pearson, Dodd L. Greer, and Nick Paul, which judgment was in the sum of $800.

Plaintiff's cause of action resulting in the judgment alleged that William H. Galloway and Nick Paul were police officers of the City of Winslow; that A. T. Hartley was chief of police of the City of Winslow; that Dodd L. Greer was county attorney of Navajo County; that Cecil McCormick was sheriff of Navajo County; and that Ben Pearson was a deputy sheriff of Navajo County. The complaint then charged that these officers "wrongfully, unlawfully, oppressively, fraudulently, wantonly, and maliciously" entered into a combination and conspiracy to bring about plaintiff's unlawful arrest and imprisonment for the purpose of depriving him of the custody of his minor child; that he was forcibly arrested by one of the defendants on a pretended and false charge of having committed a misdemeanor, not committed in the presence of any of the defendants, and without warrant; that he was unlawfully imprisoned by two of the defendants, and on two occasions assaulted by the defendant Nick Paul for declining to disclose the whereabouts of his child; that the mother of the child, from whom plaintiff is divorced, was in the territory of Alaska; that during his incarceration in jail the defendants procured from the juvenile division of the superior court an order directing the sheriff to take the child into custody for the reason and upon the ground that the child was neglected, dependent, and in need of the protection of the court; that defendants conducted a public search for the child and publicly advertised that the child was sought for the custody of the juvenile court for the reason that plaintiff was confined in jail; and that plaintiff was greatly humiliated and suffered in his business. All of the conduct referred to in the complaint was alleged to have been in combination, in furtherance of the asserted conspiracy, and for the purpose of wantonly, maliciously, fraudulently, and unlawfully depriving plaintiff of the custody of his child.

The sureties on the official bonds of all the officers were joined as defendants. At the instance of the sureties the complaint as to them was dismissed on the ground that the complaint on its face showed that the

acts complained of were not official acts of the officers within the rule laid down in Miles v. Wright, 22 Ariz. 73, 194 P. 88, 12 A.L.R. 970. No appeal was taken from this ruling and the correctness of the ruling and the holding in the Miles case is not here for re-examination, though two of the trial judges who granted the motions of the sureties expressed the view that the rule in the Miles case stated a very restricted view on the application of the law relating to the liability of sureties on bonds of public officers. .

The motions to quash the writs of garnishment were based upon the ground that the record disclosed that the debt owing from defendants to plaintiff was a separate debt of the several defendants; that the judgment debt was not a community indebtedness; and that the amounts garnishecd represented salaries earned by defendants at a time when they were married, were thus community property, and could not be subjected to the payment of the separate debts of defendants. Under our system of community property the earnings of either of the spouses, while living together, are community property. La Tourette v. La Tourette, 15 Ariz. 200, 137 P. 426, Ann.Cas.1915B, 70; Donn v. Kunz, 52 Ariz. 219, 79 P.2d 965. In Cosper v. Valley Bank, 28 Ariz. 373, 237 P. 175, an analysis of our community property statutes was made and it was decided that community property is liable only for community debts and not for the separate obligations of either of the spouses. Followed in Payne v. Williams, 47 Ariz. 396, 56 P.2d 186.

With this determination that the community property is not liable for the separate debts of either of the spouses, with which principle we are still in accord, it becomes necessary in the instant case to determine the character of the indebtedness owing from the defendants to the plaintiff. This court has repeatedly made the observation that our community property law is more like that of the State of Washington than of any of the other community property states. See Cosper v. Valley Bank, supra; Donn v. Kunz, supra; and McFadden v. Watson, 51 Ariz. 110, 74 P.2d 1181. Our court has repeatedly resorted to the decisions of the Supreme Court of Washington for enlightenment in construing our community property law where comparable statutory provisions have been there construed. The rule in Washington seems to be that community property is not liable for the tortious acts of an individual member of the community as a public officer, with one possible exception (notary public—see Kangley v. Rogers, 85 Wash. 250, 147 P. 898).

In our recent case of Ruth v. Rhodes, 66 Ariz. 129, 185 P.2d 304 (decided since the order herein appealed from was made), we held that a joint and several judgment against husband and wife growing out of a tort committed by the husband while attempting to perform his duties as a

state highway patrolman (a public officer—see State v. Hendricks, 66 Ariz. 235, 186 P.2d 943) was erroneous insofar as it attempted to subject the separate property of the wife to the judgment. The judgment was ordered modified so as to subject the separate property of the husband and the community property of the husband and wife to the judgment. The main contention on the appeal was that the judgment was in error insofar as it subjected the separate property of the wife to payment of the judgment for the husband's tort committed in the absence of the wife. and not while acting as her agent. Both parties took it for granted that the community was liable for the judgment and so admitted in their briefs. They apparently were unaware of the Washington cases—as was the court. The proposition was, therefore, not seriously considered by us and is really a matter of first impression regardless of the pronouncement in the Ruth case.

The author of an annotation in 12 A. L.R. 837, following the case of Kies v. Wilkinson, 114 Wash. 89, 194 P. 582, 12 A.L. R. 833, analyzes the Washington cases as follows:

"This doctrine seemingly was first laid down in Brotton v. Langert, 1890, 1 Wash. 73, 23 P. 688, which, as stated in the Kies case, held that community property could not be subjected to a judgment against the husband, who, as a constable, had wrongfully sold certain property on execution. And in Day v. Henry, 1914, 81 Wash. 61,

142 P. 439, a similar conclusion was reached where community property was sought to be held liable for a judgment arising from a wrongful levy made by a member of the community while serving as sheriff. And again in Bice v. Brown, 1917, 98 Wash. 416, 167 P. 1097, 1100, in holding that the act of officers of a drainage district in committing a trespass by wrongfully leaving logs and debris upon private property was a personal tort, such as would not create a liability against community property, the court said: 'Respondents were not contractors. They were officers of the district, elected to manage its affairs. They committed the tort complained of in connection with the business of the district, not the business of the communities. Since they exceeded their authority the tort was their personal tort.'

"The foregoing cases proceed upon the theory that the acts of a public officer as such are official, and not that of either the community or a member thereof, so that the tort does not create a community liability. For instance, in the Day Case the court pointed out the distinction between the acts of a member of the community as such, and his or her acts as a public officer, saying: 'The sheriff who made the wrongful levy which resulted in a judgment against him was neither a community nor the member of a community. The individual who filled the office of sheriff was a member of a community,

but that membership was as to his individual; and not his official relation. The office of sheriff could be filled only by the one elected to that office. The duties of the office could be performed only by the one elected to that office, or his duly appointed deputies. * * * In this case— and the same is true of the Brotton Case the sheriff's office was not created or maintained by the community. It was an office created by the people for their benefit, and as such they maintained it. The mere fact that the occupant of the office is a married man, and uses the salary of the office to support his family, gives the family no claim on the office. It cannot enforce obligations due the office, nor can obligations against the office be enforced against it. Respondent argues that there is no distinction, in enforcing a liability against a community, between the negligent acts of the husband in driving an automobile and the wrongful act of a sheriff, who happens to be a married man, in making a levy. The distinction is as clear as any distinction can be. The community drives the automobile; the community does not make the levy. The one is a community tort; the other is an official or separate tort.' "

In Brotton v. Langert (Wash.) supra [1 Wash. 73, 23 P. 690], one of the judges, in dissenting, said: "While there may possibly be some purely personal wrongs by a married person that should be first compensated out of the separate property of the wrong-doer, where, as in the case at bar, the constable was pursuing his usual avocation for the benefit of the community, *and not maliciously,* but through a mistaken idea of his duty, he incurred a liability to recompense the mortgagee, I see no reason whatever for holding this not to be a liability or debt for which the community real estate is, by the statute, answerable. The fact that the result of the liability has not been to the pecuniary advantage of the community certainly can make no difference in a court of justice, where advantages are not material. A good or a bad bargain cannot make the difference between right and wrong, and the community of husband and wife has not yet become so helpless a thing that we need presume in its favor, as though it were a minor or an imbecile. * * * Here the question is simply whether the wife shall, while she is fully protected in the possession of her separate property, and of her earnings, take her share of the risk that her husband will conduct the business of the community without loss; nay, it is not that only, but whether the husband himself shall be allowed to hide behind the ample skirts of his wife, in case of his 'torts,' to the ruin of the victim of his ill-advised action. * * *" (Emphasis supplied.)

With the portion of the dissenting opinion just quoted we are in full accord. We see no distinction, in enforcing a liability against a community, between the negligent act of the husband in driving an auto-

mobile and the wrongful act of a public officer, who happens to be a married man, in attempting honestly to perform the duties of his office. What is the distinction between a married man working for a private corporation and one working for a public corporation? In either case his employment is for gain, which gain is community property. In the one instance his duties are prescribed by his private employer; in the other by statute or ordinance. In the Day case it is said: "The distinction is as clear as any distinction can be. The community drives the automobile; the community does not make the levy. The one is a community tort; the other is an official or separate tort." This distinction may have been as clear as crystal to the Washington court but it is opaque to us. A married man pursuing his usual vocation, whether for a public corporation or a private individual, is working toward two ends; one, to perform the duties of his office or employment, the other to benefit the community of which he is a member by the earnings resulting from his employment. The community is financially benefited by his effort, skill, knowledge, industry, and integrity. What logical reason can be suggested that the community should not accept the liability for wrongs inflicted by the husband through ignorance, carelessness, or a mistaken idea of his duties? Our married woman statutes and community property laws were adopted for the purpose of establishing equality between husband and wife. Our community property law was conceived in honesty; its policy is to give to the wife in the marital community an equal dignity with the husband and to make her an equal factor in the matrimonial gains. The essence of a partnership is that the partners share in the gains and losses. So it is with the community. To award to the community its gains free from legal responsibility for injuries inflicted upon third persons in the pursuit of those gains is not just. The community is not a sanctuary for the wrong-doer; rather it is an entity, possessing the qualities of honesty and integrity and taking its honest gains and assuming its legal obligations.

In McFadden v. Watson, supra, the doctrine was announced that community property is liable for the tort of one spouse committed with the intention of protecting the interest of the community regardless of whether it actually benefits it. In this case the community was held liable for slander and libel of the husband in accusing a partnership employee, of which partnership he was a member, of participating in a fake robbery to obtain partnership funds. It was reasoned that the acts of the husband were intended for the benefit of the community, and that the community must be liable for any results—good or bad.

The foregoing discussion has proceeded

on the theory that the married tort-feasor was pursuing his work or duties in the usual manner and attempting honestly to perform his work or duties according to the directions of his employment or office. The question which now arises is: Should the community be liable for the tort of the husband, not participated in by the wife, conceived and executed in malice for the purpose of wickedly injuring another? Such a tort could not benefit the employer, private or state, nor could it ordinarily benefit the community.

In the case of Villescas v. Arizona Copper Co., 20 Ariz. 268, 179 P. 963, it was held that community property was liable to pay a fine imposed on the husband for the commission of a crime not committed in connection with the management of the community property. This holding was reversed in Cosper v. Valley Bank, supra, wherein it was inferentially recognized that a fine for a crime committed by the husband, not committed in connection with the management of community property, is a separate debt. It seems to us that the malicious tort committed by these defendants, not committed in connection with the management of the community property, may be likened to a separate crime of one of the spouses. In Newbury v. Remington, 184 Wash. 665, 52 P.2d 312, it was held that the marital community was not liable for an assault committed by a husband motorist who was

angered because he thought plaintiff ran through an arterial highway without stopping. The court reasoned that the tort was committed by the defendant as an aggressor and not for the benefit of the community nor connected with the husband's management thereof. None of the acts committed by these defendants were within the scope of the duties of the office, but rather they were entirely without it.

The motion to quash the writs of garnishment alleged "That the debt evidenced by the Judgment in said cause, is the separate debt of these defendants, and is the outgrowth of an alleged conspiracy to imprison plaintiff Shaw, and by such means deprive Plaintiff of the custody of his child, Michael Shaw, as more fully appears from the Complaint on file herein, * * *." In answer to the motion plaintiff admitted that the judgment entered was the outgrowth of a conspiracy to imprison plaintiff as alleged in the foregoing quoted allegation. This admission fortified the presumption that the allegations of the complaint resulting in the judgment were true.

Being of the opinion that a malicious tort committed by one of the spouses without the knowledge, consent, or ratification of the other and not resulting in a benefit to the community is not a community obligation, it follows that the debt sued on was the separate obligation of the defendant husbands and that the order

230

quashing the writs of garnishment levied to collect salaries owing to the community was correctly entered.

The judgment is affirmed.

STANFORD, C. J., and UDALL, J., concur.