655 P.2d 342

Gordon F. SELBY, Appellee,
Cross-Appellant,

v.

George SAVARD, Appellant,
Cross-Appellee.

No. 15344.

Supreme Court of Arizona,
In Division.

Nov. 18, 1982.

Goldstein & Kingsley by Philip T. Goldstein, Phoenix, for appellee/cross-appellant.

Piatt & Livoni by William M. Piatt, Phoenix, for appellant/cross-appellee.

HOLOHAN, Chief Justice.

This case is before the court on cross-appeals. Appellant George Savard appeals from the superior court's judgment on a jury verdict of $150,000.00 actual and $350,000.00 punitive damages against him, and from the denial of his motion for new trial. Cross-appellant Gordon Selby appeals from the grant of a directed verdict in favor of the marital community composed of George and Jean Savard.

The events leading up to this action began in 1967, when Selby was serving as assistant superintendent of the liquor enforcement division of the Arizona State Department of Liquor License and Control. Savard owned and operated a resort at Parker Dam, Arizona. In March 1967, Savard telephoned Selby twice to complain about liquor violations and other improprieties allegedly occurring at a rival resort nearby. The last conversation ended on an acrimonious note, with Savard accusing Selby of failing to do his job and Selby hanging up on Savard.

Shortly after these calls, Selby became aware that Savard was making defamatory remarks about him. Eventually Selby sued Savard for defamation and, in 1968, that suit was settled out of court with Savard's insurance company paying Selby the full policy amount, $4,500.00. Savard's attorney in that action, Patrick Eldridge, testified at trial that he had investigated the charges Savard was making, found them to be "completely without merit", and told Savard so. Eldridge advised Savard to settle

and warned him "that he should not go around and repeat any of these allegations ... and that he should refrain from any future conduct of that type, otherwise there would be future litigation."

Savard nevertheless continued to make accusations against Selby which included allegations of criminal conduct of the most serious nature.

In 1970, after the enforcement division of the liquor department had been merged into the Department of Public Safety (DPS), Savard contacted a DPS officer, Carl Needham, and made many of the same accusations against Selby, supported by "several large containers of documents." Among these documents was an affidavit by one Wayne Davis, alleging that Davis had investigated Selby on Savard's behalf and had found that Selby had been involved in many illegal activities. Needham conducted a full DPS investigation of the materials provided by Savard and testified that he informed Savard that he had not found any substance to any of the allegations.

Needham also testified that in 1970 he spoke with a special agent of the Federal Bureau of Investigation (FBI). The FBI agent told Needham that Selby had applied for training at the national FBI academy and that the FBI had conducted a comprehensive background investigation on Selby. Because the FBI had become aware of the rumors, Selby was investigated more intensely than the average candidate; still, the agent told Needham that he had never seen a cleaner investigation.

Savard continued to spread accusations against Selby. Finally, in January, 1976, Savard made the publication which is the subject of this action. Savard sent his accountant, Ralph McHenry, to deliver a valise full of documents to Vernon L. Hoy, the new DPS director. These documents contained the same types of accusations against Selby, including the affidavit of Wayne Davis. Mr. Hoy testified that he turned the documents over to a subordinate officer, Lt. Tabor, who investigated most of the allegations therein and found them all

to be either "unfounded," i.e., proven untrue, or "not sustained," i.e., unable to be proved or disproved.

Late in 1975 Selby's job performance and health began to deteriorate. He attributed his problems to the strain caused by Savard's accusations, although he presented no medical testimony to that effect. Selby began seeing a psychiatrist in January 1976 and also received treatment for high blood pressure. On April 7, 1976, Selby was demoted from major to captain due to poor job performance. Mr. Hoy explained that, while he had received the report of the Tabor investigation on April 5 or 6, he had decided to demote Selby even before receiving the papers from McHenry. Hoy had merely waited for the report to be completed before deciding what new assignment Selby should receive after his demotion.

Selby's job performance continued to decline. His supervisor, William Arthur, testified that he had discussed the problems with Selby, who had indicated that he was preoccupied with the problems with Savard, causing him to lose his ability to concentrate and lose interest in his duties. On the advice of John B. Miller, M.D., D.P.S. Medical Advisor, Selby began taking periods of sick leave to alleviate the mental and physical symptoms of stress that he was suffering. Selby's last day of work was October 11, 1977, and he officially retired in December of that year. Selby filed the complaint in this action on February 20, 1976, but the case did not go to trial until January, 1979. After the close of plaintiff Selby's evidence, the trial judge granted Savard's motion for directed verdict in favor of the marital community of George and Jean Savard. After all the evidence was presented, the trial judge directed a verdict for plaintiff Selby. The jury awarded Selby $150,000.00 in general damages and $350,000.00 in punitive damages.

### PROPRIETY OF DIRECTED VERDICT ON LIABILITY

■ Savard attacks the directed verdict against him on three grounds. First, he correctly states that because Selby was a

law enforcement official at the time the publication was made, Selby was a "public official." *Rosenblatt v. Baer*, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966); *Rosales v. City of Eloy*, 122 Ariz. 134, 593 P.2d 688 (App.1979). Thus, for Selby to recover for defamation, he must prove by clear and convincing evidence that Savard published false statements with " 'actual malice'— that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80, 84 S.Ct. 710, 726, 11 L.Ed.2d 686, 706 (1964); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). In *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262, 267 (1968), the Court stated that the "reckless" standard is not measured by a "reasonableness" test: "There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." Since the defendant's subjective state of mind is at issue, Savard contends that "[t]he finder of fact must determine whether the publication was indeed made in good faith." *Id.* 390 U.S. at 732, 88 S.Ct. at 1326, 20 L.Ed.2d at 267. Savard concludes that the trial judge exceeded her discretion in taking the question of whether he acted in good faith or with actual malice from the jury's consideration.

Second, Savard argues that a communication to a law enforcement official, concerning the commission of a criminal offense or otherwise affecting an important public interest, is conditionally privileged. Restatement (Second) of Torts § 598 (1977); *S.H. Kress and Co. v. Self*, 22 Ariz.App. 230, 526 P.2d 754 (1974). Once the defendant shows that a privilege may apply, the burden shifts to the plaintiff to show that the privilege was abused by publication with "actual malice." Restatement (Second) of Torts § 600 (1977); *Phoenix Newspapers, Inc. v. Choisser*, 82 Ariz. 271, 312 P.2d 150 (1957); *Ross v. Duke*, 116 Ariz. 298, 569 P.2d 240 (App.1977). Savard contends that he presented sufficient evidence to raise the presumption that the publication was condi-

tionally privileged and that the court erred in directing the verdict when the question of malice should have been left to the jury.

Third, Savard states that a directed verdict for the plaintiff is justified only if there is no evidence which would justify the jury in finding in the defendant's favor, viewing the evidence in the light most favorable to the defendant and drawing all reasonable inferences from the evidence in defendant's favor. *Weber v. Roosevelt Water Conservation Dist., Maricopa County*, 126 Ariz. 509, 617 P.2d 17 (1980), *Byrns v. Riddell, Inc.*, 113 Ariz. 264, 550 P.2d 1065 (1976); *Whitly v. Moore*, 5 Ariz.App. 369, 427 P.2d 350 (1967). Savard argues that his allegations of his belief in the truth of the publication precluded the court from directing a verdict against him.

We find that because Selby is a "public official" under the *New York Times* standard, the issue of privilege does not raise any issue different from that raised by the *New York Times* decision itself, namely, had Selby established by clear and convincing evidence that the publication was made with "actual malice"? If so, the privilege was overcome and Selby met his burden of proving defamation. This same requirement of showing of actual malice applies to Savard's claim of conditional privilege for information furnished to law enforcement officers. We have considered the evidence before the trial court when the motion was granted, and it supports the action taken. It is true that "[t]he proof of 'actual malice' calls a defendant's state of mind into question, [citation omitted] and does not readily lend itself to summary disposition." *Hutchinson v. Proxmire*, 443 U.S. 111, 120 n. 9, 99 S.Ct. 2675, 2680 n. 9, 61 L.Ed.2d 411, 421 n. 9 (1979). But it is equally true that a defamation defendant cannot escape liability merely by alleging subjective belief in the truth of the matter published. "[P]roof of the necessary state of mind could be in the form of objective circumstances from which the ultimate fact could be inferred." *Herbert v. Lando*, 441 U.S. 153, 160, 99 S.Ct. 1635, 1640–41, 60 L.Ed.2d 115, 124 (1979). In this case, Savard contin-

ued publishing the accusations against Selby even though he had been advised by his own counsel and DPS Officer Carl Needham that the allegations lacked merit and even though he had settled a prior lawsuit over the same allegations with the same party. In addition, Savard admitted that as to at least one allegation he had no evidence whatever.

We find that this evidence overwhelmingly shows that Savard had actual knowledge of the probable falsity of the allegations and published them with, at the very least, reckless disregard of whether they were true or false.

## DISCOVERABILITY OF THE DOCUMENTS DELIVERED TO DPS DIRECTOR HOY BY SAVARD

Copies of the documents delivered by Savard to Vernon Hoy and copies of the internal DPS investigation files were subpoenaed in April, 1976 by Selby. Chief Hoy initially refused to produce these documents, claiming that they were privileged and confidential. Selby moved pursuant to rule 37, Arizona Rules of Civil Procedure, 16 A.R.S., for an order compelling discovery, and the court granted the motion and ordered that the requested material be delivered to the court for an in-camera inspection. The trial court later permitted the documents to be admitted in evidence at the trial.

Savard argues that under rule 26(b)(1), Arizona Rules of Civil Procedure, 16 A.R.S., parties may only discover nonprivileged materials. He contends that citizens who communicate information to law enforcement officers concerning crimes are protected by an absolute privilege against disclosure. *In re Quarles*, 158 U.S. 532, 535–36, 15 S.Ct. 959, 961, 39 L.Ed. 1080, 1081 (1895); *Vogel v. Gruaz*, 110 U.S. 311, 4 S.Ct. 12, 28 L.Ed. 158 (1884); *see also* Restatement (Second) of Torts § 587 (1977).

■ Selby contends that the privilege was waived by the fact that Savard had made the same defamatory remarks to many persons not connected with law enforcement prior to making the publication involved in this action. *See* Restatement (Second) of Torts § 587, comment (e) (1977):

> As to communications preliminary to a proposed judicial proceeding, the rule stated in this Section applies only when the communication has some relation to a proceeding that is contemplated in good faith and under serious consideration. The bare possibility that the proceeding might be instituted is not to be used as a cloak to provide immunity for defamation when the possibility is not seriously considered.

Excessive publication is an abuse of a conditional privilege. *Id.,* § 604. Any privilege to communicate may be waived by publication of that communication to persons other than the privileged recipient, *cf. Tripp v. Chubb*, 69 Ariz. 31, 208 P.2d 312 (1949) [attorney-client privilege]; *Patania v. Silverstone*, 3 Ariz.App. 424, 415 P.2d 139 (1966) [physician-patient privilege].

■ We believe that Savard's excessive prior publications of the defamatory materials, when coupled with the trial court's finding that he acted with actual malice in making the publication in question here, sufficed to waive any privilege in this area. Thus the trial court properly ordered discovery of these materials.

## EXCLUSION OF DEPOSITION OF JESUS CUELLAR

■ On Selby's motion *in limine,* the trial judge precluded introduction of the deposition testimony of Jesus (Jess) Cuellar, a former Phoenix police officer. The testimony concerned the alleged reputation Gordon Selby had had during the late 1940's in Phoenix, when Cuellar was about 8 years old and worked as a bootblack in central Phoenix. Cuellar also testified in his deposition that he had listened to a wiretapped telephone conversation between Selby and reputed Mafia figure Bill Bonnano in 1961, when Cuellar was a police officer. The trial judge granted the motion *in limine* on grounds that the police wiretap of the conversation had not been authorized by a

court order and had thus violated the federal wiretap statute, 47 U.S.C. § 605, which was in effect at the time the tap took place, relying upon *Lee v. Florida*, 392 U.S. 378, 88 S.Ct. 2096, 20 L.Ed.2d 1166 (1968). *Lee* held that illegally obtained wiretap evidence could not be used in any court.

Savard contends that *Fuller v. Alaska*, 393 U.S. 80, 89 S.Ct. 61, 21 L.Ed.2d 212 (1968) held that the exclusionary rule of *Lee* was not to be retroactively applied. *Fuller* held that the exclusionary rule of *Lee* was to apply only to trials in which the evidence was sought to be introduced after the 1968 date of the *Lee* decision; because this trial occurred in 1979, the *Lee* rule applied even though the evidence was illegally obtained before that date. The trial judge was correct in excluding the evidence obtained through the unauthorized wiretap.

## LIMITATION ON DEFENSE'S REPUTATION WITNESSES

The defense offered the testimony of several witnesses on the issue of Selby's reputation. The trial court excluded the testimony of six of the character witnesses. Appellant has challenged in this appeal the exclusion of the testimony of three of those witnesses, Jess Cuellar, Helen Haney, and William Michael Smith. The trial court, on the basis of lack of foundation ruled that the witnesses were not shown competent to testify on the issue of the plaintiff's reputation at the time material to this case.

The trial judge showed concern that the character witnesses not be basing their opinions on information from newspaper accounts of the case after Selby initiated the action. Such testimony would be irrelevant to the state of Selby's reputation when the publication was made to Director Hoy in 1976.

In effect the trial judge also ruled that Savard could not use witnesses whose information was based on rumors started and spread by Savard himself. While it is often difficult to identify the differences, the law of evidence recognizes a difference between reputation and rumor. *See* 1 Wigmore, Evidence § 74 (3rd Ed. 1940); 5 Wigmore, Evidence § 1611 (Chadborn rev. 1974).

A trial court's rulings on the exclusion or admission of evidence will not be disturbed on appeal unless a clear abuse of discretion appears and prejudice results. *Rimondi v. Briggs*, 124 Ariz. 561, 606 P.2d 412 (1980); *Falcher v. St. Luke's Hosp. Medical Center*, 19 Ariz.App. 247, 506 P.2d 287 (App.1973). The competency of a witness to testify on a given subject is a question for the trial court's discretion, reviewable only for abuse. *Standage v. Tarpey*, 8 Ariz.App. 342, 446 P.2d 246 (1968). We find no such abuse here.

Two of the witnesses, Jess Cuellar and Helen Haney, would testify to the reputation of Selby in the late 1950's. Although the trial judge felt that they had insufficient knowledge of Selby or of the reliability of their sources to be allowed to testify, the period of time involved was not relevant. Selby had settled one defamation action with Savard in 1968. The issue concerning damage to Selby's reputation was for the period after 1968.

The offered testimony of William Michael Smith did apply to the period of time at issue, but the witness was not able to recall sufficient specifics for the trial judge to be satisfied that a foundation had been established of the witness' knowledge of the subject. We do not find an abuse of discretion in the ruling excluding the testimony of the witness Smith.

Savard complains that the trial judge seemed to apply stricter standards of foundation for the defense witnesses than were applied to the plaintiff. The record shows that the defense was able to present substantial adverse testimony through two qualified witnesses, Paul Blubaum and Leo Beaman. It appears that when a witness for either side appeared qualified the trial judge allowed the witness to testify. Savard had a full and fair opportunity to present his case.

## DENIAL OF SAVARD'S MOTION FOR MISTRIAL

In his opening statement, Selby's counsel made the following remark:

The evidence will also show that Mr. Savard, by his own admission, and this has to be back about 1974, had spent over $150,000 in his pursuit of Mr. Selby.

In closing, counsel for Selby told the jury:

So, when we talk about punitive damages, bear in mind, if in fact it is a deterrent, it is the only stopgap measure that you can have against a person who has a lot of money, who can set about destroying another individual in public life with defamatory allegations over, and over again. And he can spend all the money he needs with lawyers, investigators, and make the statements again, and again, and again, but somebody sometime has to tell Mr. Savard, in some fashion, "Mr. Savard, you don't do this anymore." And, any other member in the community just because he is wealthy, you don't do this to people.

After counsel rested, Savard's counsel moved for a mistrial because Selby had failed to offer any evidence that Savard had spent any money at all in pursuing Selby. The court denied the motion. Savard cites the ruling as error.

■ Selby points out that Savard failed to object to the closing argument statement, which waives any such objection on appeal. *Andrew Brown Co. v. Painters Warehouse, Inc.,* 111 Ariz. 404, 531 P.2d 527 (1975). As for the opening argument, counsel believed in good faith that he would present evidence that Savard had spent the amount mentioned, in the form of a tape recorded statement made by Savard himself. However, the court precluded the introduction of this taped statement. Nevertheless, counsel may argue any reasonable inferences which may be drawn from the facts presented by the evidence at trial. *Grant v. Arizona Public Service,* 133 Ariz. 434, 652 P.2d 507 (1982). *Pelayo v. Bell,* 13 Ariz.App. 418, 477 P.2d 537 (1971). The evidence showed that Savard had hired attorneys and investigators to investigate Selby over a nine-year period. Thus, the inference that Savard had spent a large sum on these pursuits was justified.

## JURY INSTRUCTIONS CONCERNING DAMAGES

The trial court instructed the jury both as to general and punitive damages. Appellant Savard objected to the punitive damages instruction on grounds that "the form should reflect only intentional acts and not simply willful or wanton misconduct." Savard now contends that there was insufficient evidence to justify the jury's verdicts as to general or punitive damages.

■ Selby points out that Savard neglected to object to the general damage instruction and thus waived any opportunity to object on appeal. *Montano v. Scottsdale Baptist Hospital, Inc.,* 119 Ariz. 448, 581 P.2d 682 (1978). We are satisfied that the award of general damages is supported by adequate evidence, and we will not disturb it on appeal. *Valley National Bank v. Brown,* 110 Ariz. 260, 517 P.2d 1256 (1974); *Tyron v. Naegle,* 20 Ariz.App. 138, 510 P.2d 768 (1973).

■ Savard at trial did object to the punitive damage instruction on the grounds that there was no basis for the instruction. On appeal, he contends that a punitive damages award in the defamation context violates the first amendment. The only objection which may be raised on appeal, however, is that made at trial. Rule 51(a), Arizona Rules of Civil Procedure, 16 A.R.S.; *Hurvitz v. Coburn,* 117 Ariz. 300, 572 P.2d 128 (App.1977). At any rate, because the court directed a verdict on the issue of liability, "actual malice" was found to exist which would fully justify the award made here. Additionally, there was sufficient evidence of common-law malice—spite and ill-will—to support the award. Finally, nothing in the first amendment bars an award of punitive damages if conditioned upon a showing of knowing or reckless falsehood. *Herbert v. Lando,* 441 U.S. 153, 162, 99 S.Ct. 1635, 1641–42, 60 L.Ed.2d 115, 125 (1979). Thus, Savard's arguments lack merit and we affirm the award of general and punitive damages.

## CROSS–APPEAL CHALLENGING THE DIRECTED VERDICT IN FAVOR OF JEAN SAVARD AND THE MARITAL COMMUNITY

█ Selby by cross-appeal challenges the ruling of the trial court granting a directed verdict in favor of George Savard's wife Jean Savard and in favor of the marital community of George and Jean Savard. Selby points out that Savard owned a resort which he stated that he had to sell because of harassment from Liquor Department agents instigated by Selby. Because the resort was the source of income for the community, the resort was run for a community purpose. Thus, Selby concludes that Savard's acts in attacking Selby were intended to benefit the community. In addition, Jean Savard stated in her deposition that while she was unaware of the details of what her husband had done, she believed he was acting in her behalf at all times. The Arizona rule is that the community is liable for the intentional torts of either spouse if the tortious act was committed with the intent to benefit the community, regardless of whether in fact the community receives any benefit. *Smith v. Chapman,* 115 Ariz. 211, 564 P.2d 900 (1977); *Donato v. Fishburn,* 90 Ariz. 210, 367 P.2d 245 (1961); *Rodgers v. Bryan,* 82 Ariz. 143, 309 P.2d 773 (1957); *Shaw v. Greer,* 67 Ariz. 223, 194 P.2d 430 (1948). Thus, Selby concludes that Savard acted with intent to benefit the community and that the community is thus liable.

█ There is no presumption of community liability if the action is based on alleged tortious conduct. *Garrett v. Shannon,* 13 Ariz.App. 332, 476 P.2d 538 (1970). The evidence showed that Savard had sold the resort eight years prior to the 1976 defamations. The former ownership of the resort fails to establish a community purpose for the later defamation.

█ In the area of intentional torts, the community is not liable for one spouse's malicious acts unless it is specifically shown that the other spouse consented to the act or that the community benefited from it. *Shaw v. Greer,* 67 Ariz. 223, 194 P.2d 430 (1948). The reasoning is that because a malicious tort does not ordinarily benefit the community, the community is not liable without proof of the non-tortfeasor spouse's knowledge of, consent to, or ratification of the other spouse's wrong. No such proof was made here. Jean Savard's deposition showed that she was essentially ignorant of what her husband was doing and why. Savard's apparent motive, revenge on Selby for his perceived attacks on Savard, cannot be construed as a community purpose. Thus the trial court properly directed a verdict in favor of the community and Jean Savard personally. *Howe v. Haught,* 11 Ariz.App. 98, 462 P.2d 395 (1970).

The judgment of the trial court is affirmed.

GORDON, V.C.J., and HAYS, J., concur.