NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Marriage of:

THOMAS SWETT,
*Petitioner/Appellant,*

*v.*

KAREN BROWN,
*Respondent/Appellee.*

No. 1 CA-CV 13-0527
FILED 1-8-2015

Appeal from the Superior Court in Maricopa County
No. FN2011-052146
The Honorable Kristin C. Hoffman, Judge

**AFFIRMED**

COUNSEL

James L. Leather, PLLC, Phoenix
By James L. Leather
*Counsel for Petitioner/Appellant*

Abram & Meell, PA, Phoenix
By Gregory J. Meell
*Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Patricia A. Orozco delivered the decision of the Court, in which Judge Randall M. Howe and Judge Maurice Portley joined.

---

**O R O Z C O**, Judge:

**¶1**　　　　Thomas M. Swett (Husband) filed a petition for dissolution of marriage and Karen J. Brown (Wife) accepted service of the petition. After the family court entered a Decree, Husband filed an unsuccessful motion for new trial and for relief from the Decree. He appeals from the denial of that motion, the Decree, and a separate order awarding attorney fees to Wife pursuant to Arizona Revised Statutes (A.R.S.) sections 25-324.A. and B.3. (West 2014).[1] Finding no abuse of discretion or legal error, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

**¶2**　　　　After Wife accepted service of the dissolution petition, the parties entered into an Arizona Rule of Family Law Procedure (Rule) 69 agreement to resolve the division of their real and personal property. The Rule 69 agreement did not, however, resolve their dispute over whether Wife should receive spousal maintenance.

**¶3**　　　　Wife was seventy years old at the time of trial. During a December 2012 pre-trial status conference, and pursuant to the parties' agreement, the family court appointed Wife's sister, Dr. Betty Kelley, to serve as Wife's guardian ad litem (GAL) for purposes of the dissolution. Dr. Kelley was appointed as Wife's GAL because Lawrence Teitel, MD, a neurologist who had examined Wife twice in 2012, opined that Wife was experiencing "a gradual increased dementia" and "is not in a position to manage personal affairs and live alone." As a result, Wife moved in with Dr. Kelley and paid $400 per month for room and board. Two days before trial, however, Wife moved to Bear Canyon Estates retirement community.

**¶4**　　　　The family court held a one-day trial and subsequently entered orders regarding the payment of spousal maintenance and the

---

[1]　　　We cite the current version of the applicable statutes unless revisions material to this decision have since occurred.

other remaining issues. The court determined that Wife qualified for spousal maintenance pursuant to A.R.S. § 25-319.A.1-4. (West 2014) and awarded her $500 per month as spousal maintenance for an indefinite period. Husband unsuccessfully moved for a new trial and sought relief from the Decree under Rules 83.A. and 85.C.1. Husband timely appealed from that ruling and the Decree.

¶5         The family court subsequently resolved the competing attorney fee requests and awarded $35,000 to Wife in a separate order. Husband timely appealed. We have jurisdiction pursuant to A.R.S. § 12-2101.A.1. and 5(a) (West 2014).

## DISCUSSION

### I.      Jurisdiction

¶6         Husband first argues that the family court lacked subject matter jurisdiction to appoint Dr. Kelley as Wife's GAL. According to Husband, the family court should have held "proceedings under A.R.S. Title 14." A party may raise the issue of subject matter jurisdiction at any time. *Swichtenberg v. Brimer*, 171 Ariz. 77, 82, 828 P.2d 1218, 1223 (App. 1991).

¶7         Subject matter jurisdiction concerns "a court's statutory or constitutional power to hear and determine a particular type of case." *State v. Maldonado*, 223 Ariz. 309, 311, ¶ 14, 223 P.3d 653, 655 (2010). The Arizona Legislature broadly provided that "[t]o the full extent permitted by the constitution, the court has jurisdiction over all subject matter relating to . . . [p]rotection of . . . incapacitated persons."[2] A.R.S. § 14-1302.A.2. (West 2014). It also granted courts "general jurisdiction to make orders, judgments and decrees and take all other action necessary and proper to administer justice in the matters which come before it . . . ." A.R.S. § 14-1302.B. These laws empowered the family court to appoint a GAL in a dissolution proceeding. *See* A.R.S. § 14-1302.A.2., B; *cf. Ruvalcaba ex rel.*

---

[2]        An "incapacitated person" is "any person who is impaired by reason of mental illness, mental deficiency, mental disorder, physical illness or disability, chronic use of drugs, chronic intoxication or other cause, except minority, to the extent that he lacks sufficient understanding or capacity to make or communicate responsible decisions concerning his person." A.R.S. § 14-1201.26. (West 2014) (adopting the meaning prescribed in § 14-5101).

*Stubblefield v. Ruvalcaba*, 174 Ariz. 436, 446, 850 P.2d 674, 684 (App. 1993) (holding that family court had jurisdiction of dissolution petition filed by guardian of incompetent adult); *see also* A.R.S. § 14-1408.A. (West 2014) (a person becomes a guardian ad litem for an "incapacitated person" if the court determines that "an interest is not represented"); *see generally* A.R.S. § 14-1201.24. (West 2014) (defining a GAL to include a person appointed pursuant to A.R.S. § 14-1408). Accordingly, the family court had jurisdiction to appoint a GAL for Wife.[3]

## II. The Merits

**¶8** On appeal from the denial of a motion for new trial, we ascribe broad discretion to the family court and will not disturb its ruling absent a clear abuse of that discretion. *Pullen v. Pullen*, 223 Ariz. 293, 296, ¶ 10, 222 P.3d 909, 912 (App. 2009). Similarly, we will affirm an order denying relief from the Decree "unless the record on appeal demonstrates a clear abuse of discretion." *De Gryse v. De Gryse,* 135 Ariz. 335, 336, 661 P.2d 185, 186 (1983) (applying Arizona Rule of Civil Procedure 60(c), a rule analogous to Arizona Rule of Family Law Procedure 85). Husband bears the burden of establishing an abuse of discretion. *See Pullen*, 223 Ariz. at 296, ¶ 10, 222 P.3d at 912. An abuse of discretion occurs when a court commits an error of law in reaching a discretionary decision, reaches a conclusion without considering the evidence, commits a substantial legal error, or makes findings lacking evidentiary support. *Flying Diamond Airpark, L.L.C. v. Meienberg*, 215 Ariz. 44, 50, ¶ 27, 156 P.3d 1149, 1155 (App. 2007). We review de novo the family court's interpretation of statutes and rules. *See Melgar v. Campo*, 215 Ariz. 605, 606, ¶ 6, 161 P.3d 1269, 1270 (App. 2007); *Aztar Corp. v. U.S. Fire Ins. Co.*, 223 Ariz. 463, 479, ¶ 60, 224 P.3d 960, 976 (App. 2010).

**¶9** An erroneous ruling does not justify a new trial unless it affects a party's substantial rights. Ariz. R. Family L.P. 86. We must presume that the family court "found every fact necessary to support the judgment" because neither party requested findings of fact or conclusions of law pursuant to Arizona Rule of Family Law Procedure 82(A). *See Neal v. Neal*, 116 Ariz. 590, 592, 570 P.2d 758, 760 (1977)**.**

---

[3]     *Accord* Ariz. R. Family L.P. 10.H. (a guardian is a representative, whether appointed by the court or authorized by A.R.S. Title 14, who "may act on behalf of the . . . incompetent person to the extent allowed under Arizona law or the court's order of appointment"). The Title 14 procedures apply to the appointment of a guardian in family court. Ariz. R. Family L.P. 10.I.

### A. Wife's Guardian

**¶10** Husband argues that, even if the family court had subject matter jurisdiction, it failed to comply with the guardianship procedures. A minute entry from the December 2012 status conference stated that the family court appointed Dr. Kelley as Wife's GAL and noted the appointment was by agreement of the parties. Husband, however, contends that he did not agree to Dr. Kelley's appointment and the family court failed to comply with disclosure provisions for prospective temporary and permanent guardians,[4] among other requirements. Because Husband has not supplied us with a transcript from that status conference, or from any other relevant proceedings besides the trial, we presume that the record supports the family court's findings and that the statutory guardianship requirements were met. *See* ARCAP 11(b)(1); *Baker v. Baker*, 183 Ariz. 70, 73, 900 P.2d 764, 767 (App. 1995) (assuming that an unfurnished transcript would support the family court's findings and conclusions).

**¶11** On appeal, Husband argues that Dr. Kelley's appointment is invalid because Dr. Kelley never consented in writing. Arizona Rule of Civil Procedure 17(i) provides, in relevant part, "[n]o person shall be appointed guardian ad litem or next friend except upon written consent filed in the action." However, we find Dr. Kelley's failure to provide written consent a harmless error. Under Arizona Family Law Procedure Rule 86:

> No error . . . in anything done or omitted by the court or by any parties is ground for granting a new trial . . . or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

Because the error did not affect Husband's substantial rights, Dr. Kelley's appointment was harmless error.

**¶12** Finally, Husband claims that the family court should have revoked the appointment "when it became evident that [Wife] had the capacity to testify for herself." Specifically, he argues that "the trial court

---

4       *See* A.R.S. § 14-5106.A. (West 2014).

should have terminated the [guardianship] and precluded [Dr.] Kelley from testifying." We disagree.

¶13　　　　Husband did not object to Dr. Kelley testifying at trial. Wife's counsel informed the court at the outset of trial that he did not expect Wife to testify due to "memory and capacity issues." Husband did not object.[5] Later, Husband's counsel objected because Wife was mouthing an apparent answer to a question when Dr. Kelley was testifying. Husband's counsel stated that "she's not -- remember, she's not going to be testifying -- . . . and if she -- no. If she can -- if she can mouth the answers, then she can -- … testify." The discussion in the transcript indicates that Wife was stating a doctor's name. Wife's counsel and the family court agreed that Wife could not testify in this proceeding and the family court denied Husband's "oral motion to strike" the answer by Dr. Kelley.

¶14　　　　The record does not reflect that Husband moved to determine Wife's capacity to testify at trial or objected to her failure to testify.[6] The capacity issue is waived, as are the related claims that Husband was deprived of the right to effectively confront adverse witnesses and conduct

---

[5]　　　Wife, along with Dr. Kelley, agreed on the record to the parties' previously negotiated Rule 69 agreement, but otherwise Wife did not testify. At trial, Wife chose not to pursue the prior argument in the joint pretrial statement that she lacked capacity when negotiating the agreement, which pre-dated Dr. Kelley's appointment.

[6]　　　Husband's pre-trial arguments belie his post-trial argument that Wife was capable of testifying. In a motion in limine, Husband objected to Wife's production of medical records with her Eleventh Disclosure Statement on the ground that the records were irrelevant to any pending issue. "The only question before the Court," Husband stated, "is whether the combination of income and benefits [Wife] is receiving and/or is entitled to receive from third party sources will adequately meet that $2,795.00 monthly expense, or whether there will be an unavoidable shortfall that cannot be made up except by an award of monthly spousal maintenance." Likewise, the joint pre-trial statement does not identify any dispute as to Wife's lack of capacity *after* Dr. Kelley's appointment.

meaningful cross-examination of Wife. *See United States v. Globe Corp.* 113 Ariz. 44, 51, 546 P.2d 11, 18 (1976).[7]

## B.   Evidentiary Rulings

### 1.   Dr. Kelley's Testimony

**¶15**          Husband also contends that the family court should have precluded Dr. Kelley from testifying because she lacked sufficient knowledge of the issues and Wife had the capacity to testify for herself. We disagree.

**¶16**          This court will affirm the admission or exclusion of evidence absent a clear abuse of discretion and resulting prejudice. *Selby v. Savard*, 134 Ariz. 222, 227, 655 P.2d 342, 347 (1982). The prejudice "must affirmatively appear from the record." *Rimondi v. Briggs*, 124 Ariz. 561, 565, 606 P.2d 412, 416 (1980). The competency of a witness is a question for the family court, reviewable only for abuse of discretion. *Selby*, 134 Ariz. at 227, 655 P.2d at 347.

**¶17**          It is undisputed that Dr. Kelley had some personal knowledge of Wife's finances and needs for purposes of Arizona Rule of Evidence 602. Husband only contends that Dr. Kelley's knowledge was insufficient. Even if Dr. Kelley lacked knowledge of some issues, the family court was not required to preclude her testimony, but could give her testimony the weight it deserved after considering all the other evidence presented at trial. *See State v. Davolt,* 207 Ariz. 191, 210, ¶ 70, 84 P.3d 456, 475 (2004) (explaining that "[t]he degree of qualification goes to the weight given the testimony, not its admissibility"). This court will not reweigh the evidence on appeal. *See Gutierrez v. Gutierrez*, 193 Ariz. 343, 347-48, ¶ 13, 972 P.2d 676, 680-81 (App. 1998) (deferring to the trial court's determination of witnesses' credibility and the weight accorded to conflicting evidence and holding that reasonable evidence supported a finding); *Hamilton v. Municipal Court (Mesa)*, 163 Ariz. 374, 378, 788 P.2d 107, 111 (App. 1989) (holding that an

---

[7]          Wife contends that Husband lacked standing to challenge Dr. Kelley's appointment. Because Wife cites no legal authority and otherwise fails to develop the argument, we decline to consider it. *See Polanco v. Indus. Comm'n*, 214 Ariz. 489, 491 n.2, ¶ 6, 154 P.3d 391, 393 n.2 (App. 2007) (declining to discuss undeveloped and unsupported argument mentioned in passing); *see generally* ARCAP 13(a)(6) (requiring an appellate brief to contain authorities supporting the party's contentions).

appellate court does not weigh evidence and instead decides whether substantial evidence exists to support the decision).

¶18        Moreover, we do not agree with Husband's argument that Dr. Kelley's incomplete knowledge of Wife's finances prejudiced or affected his substantial rights.  To the contrary, Husband impeached Dr. Kelley by obtaining admissions that she had carried over expenses from an old affidavit of financial information and erroneously incorporated them as current expenses in a subsequent affidavit of financial information. Moreover, Husband had known that Dr. Kelley would be a witness four months prior to trial, and could have taken her deposition.

¶19        We find no support for Husband's unsubstantiated argument that Dr. Kelley's presence created unfair sympathy for Wife in a bench trial. There is no factual support for his assertion that the existence of the guardianship was the basis for the finding under A.R.S. § 25-319.A.2. and B.3. that Wife is in the early stages of dementia.  The court received other evidence that supported the finding; namely Trial Exhibit 75, which states that as of late 2012 Wife was experiencing "a gradual increased dementia" and "is not in a position to manage personal affairs and live alone."

### 2.        Undisclosed Evidence

¶20        Husband also complains that Dr. Kelley's testimony concerning Wife's living expenses at Bear Canyon Estates retirement community was not disclosed and conflicted with prior disclosures. Whether to admit untimely disclosed evidence is within the family court's discretion.  *Packard v. Reidhead*, 22 Ariz. App. 420, 422-23, 528 P.2d 171, 173-74 (App. 1974).

¶21        Parties must disclose specific categories of documents and information.  Ariz. R. Family L.P. 49.  Under Rule 65.C .1.:

> A party who fails to timely disclose information required by Rule 49 or 50 shall not, unless such failure is harmless, be permitted to use as evidence at trial, at a hearing, or in support of a motion, the information or witness not disclosed, except by leave of court for good cause shown.

During trial, Dr. Kelley testified that temporarily, Wife's rent at Bear Canyon Estates would be discounted to the rate of $2,600 per month, but Dr. Kelley was orally informed that this discounted rate would expire and the rent would increase to $3,500.

¶22         Wife's disclosure statement, joint pre-trial statement, and affidavit did not specify that her monthly rent at Bear Canyon would be $2,600 or subject to a $900 increase.  In the December 28, 2012 Affidavit of Financial Information, Dr. Kelley listed Wife's expected rent at Bear Canyon as $3,500 per month.  According to Wife's Sixth Disclosure Statement, filed in January 2013, she anticipated a "monthly living/residential expense of $2,795.00 that will include her utilities, cable service, meals and other services listed in the disclosed documents[.]"  The disclosure statement attaches a brochure listing rates for various floor plans at Bear Canyon with the annotation of "$3,500" for "#205."  In the joint pre-trial statement, filed April 16, 2013, Wife's portion incorporated the anticipated monthly expenses listed in her December 28, 2012 Affidavit of Financial Information.

¶23         Dr. Kelley admitted at trial that she failed to provide a copy of the lease or disclose the potential rent increase to Husband.  The reduced charge for the first year was actually beneficial to Husband's spousal maintenance argument, and the family court used the $2,600 figure in its spousal maintenance calculation.  Accordingly, admission of this evidence was consistent with Rule 65.C.1. and does not require us to analyze whether Dr. Kelley had good cause for failing to disclose the lease.

¶24         Husband also notes that Dr. Kelley failed to file a Rule 49 disclosure statement concerning her consultation with a financial adviser.  Dr. Kelley testified she contacted the adviser in an effort to gauge Wife's future income from investments but did not call him as a trial witness.  In light of Dr. Kelley's failure to disclose the adviser's existence and role, the parties and court agreed that Dr. Kelley would testify only about her own opinion concerning a reasonable rate of return on Wife's investments.  Consistent with the joint pre-trial statement, Dr. Kelley testified that a five percent return on Wife's investments was reasonable and would likely provide Wife with $1,151 per month.  We find no abuse of discretion, perceived harm or basis for reversal.  Husband fails to specify which Rule 49 provision required Wife to disclose the adviser, who did not testify at trial.  Moreover, we fail to perceive any harm from Dr. Kelley's failure to identify him.  *See* Ariz. R. Family L.P. 65.C.1.

¶25         Finally, Husband argues that Dr. Kelley failed to disclose Wife's food and transportation expenses to which she later testified.  Because Husband's post-trial motion raised only the rent and financial adviser as disclosure issues, we decline to address any other disclosure issues.  *See Globe*, 113 Ariz. at 51, 546 P.2d at 18.

### 3.    Bypass Mechanism

¶26        Husband also argues that the family court should have created a mechanism to "bypass" the statutory protections for Wife's medical information, thereby enabling him to assess whether she qualified for long-term care benefits under an insurance policy and therefore no longer required spousal maintenance.  Because Husband failed to present this argument to the family court, we decline to address it.  *See Globe*, 113 Ariz. at 51, 546 P.2d at 18.

### C.    Attorney Fees

¶27        Husband contends that the family court abused its discretion by awarding Wife $35,000 of the $78,443.46 in attorney fees she requested pursuant to A.R.S. § 25-324.A. and B.3.  We review the family court's interpretation of the statute de novo but review the award or denial of attorney fees for abuse of discretion.  *Engel v. Landman*, 221 Ariz. 504, 514, ¶ 45, 212 P.3d 842, 852 (App. 2009); *Ramsey Air Meds, L.L.C. v. Cutter Aviation, Inc.*, 198 Ariz. 10, 13, ¶ 12, 6 P.3d 315, 318 (App. 2000).

¶28        Section 25-324.A. grants a court discretion to award reasonable costs and attorney fees after considering the parties' financial resources and the reasonableness of the positions they have taken throughout the proceedings.  In assessing resources, the family court may consider the relative resource disparity between the parties, their ability to pay fees, the ratio of fees owed to assets owned, income, and similar matters.  *Magee v. Magee*, 206 Ariz. 589, 592-93, ¶¶ 17-18, 81 P.3d 1048, 1051-52 (App. 2004).

¶29        Husband acknowledges that the family court divided the marital assets equally but argues that Wife has $276,308 in separate property retirement investments and had demonstrated her ability to pay attorney fees.  But as the family court found, and Husband agreed, Wife was seventy years of age and had little to no employment prospects.  Wife's income consists of Social Security payments and investment returns, and she is now depleting retirement savings to pay for living expenses.  Husband, in contrast, was forty-nine years old at the time of trial and was receiving $9,324 in gross monthly income from his position as Director of Process Reengineering at Dignity Health.  Based on "Husband's greater earning capacity and income," the family court found disparity in the parties' financial resources.

¶30        The family court was also required to consider the reasonableness of the positions taken by each party throughout the

proceedings under an objective standard. *See Williams v. Williams*, 219 Ariz. 546, 548, ¶ 10, 200 P.3d 1043, 1045 (App. 2008). The court found that each party had taken unreasonable positions at times. The court cited Husband's unreasonable positions on Wife's cognitive abilities and opposition to her motion to compel production of records from third parties. The court also found unreasonable Wife's initial resistance to enforcement of an agreement mediated before Dr. Kelley's appointment. The record supports the family court's findings, and we find no abuse of discretion in the fee award. *See MacMillan v. Schwartz*, 226 Ariz. 584, 592, ¶ 38, 250 P.3d 1213, 1221 (App. 2011) (affirming award of fees and asserting that the trial court was in the best position to observe and assess the parties' conduct).

¶31 Husband argues, however, that the family court erroneously concluded that he unnecessarily caused the parties to incur more fees than Wife. Even if true, the other reasons cited by the family court reasonably supported its award. Accordingly, we affirm the family court's award of attorney fees to Wife under A.R.S. § 25-324.A.

### D. Attorney Fees on Appeal

¶32 Both parties request an award of attorney fees on appeal pursuant to A.R.S. § 25-324, and Wife also seeks fees under A.R.S. § 12-349 (West 2014). After considering the parties' resources and the reasonableness of their positions, we exercise our discretion and award Wife her costs and reasonable attorney fees under A.R.S. § 25-324.A. The award is contingent upon Wife's timely compliance with Arizona Rule of Civil Appellate Procedure 21. We need not consider whether she is also entitled to an award under A.R.S. § 12-349.

### CONCLUSION

¶33 For the foregoing reasons, we affirm the family court's rulings in all respects.



Ruth A. Willingham · Clerk of the Court
FILED: ama